# Empire Life Insurance Company *v.* Gee.

## *Assumpsit.*

(Decided November 21, 1912.  60 South. 90.)

1. *Insurance; Contracts; Construction.*—The language in a policy of insurance will be given its ordinary common interpretation; but if it contains a clause uncertain in meaning, when read in connection with the entire policy, and capable of two equally rational constructions, that construction will be adopted which is most favorable to the insured.

2. *Same.*—A policy guaranteeing perfect protection and declaring that during the premium paying period, after the policy has been in. force sixty days, insurer will pay beneficiary $5,000 in discharge of claims, provided insured died as the result, directly or independently of all other causes of bodily injuries effected through external, violent and accidental means, and provided death occurs within ninety days after receiving injury causing death, etc., insures against a death occasioned from an accident within ninety days after receiving injury, although the accident happened within sixty days after the issuance of the policy.

3. *Same; Defenses; Fraudulent Representation.*—Where fraudulent representations are set up in defense of an action on an insurance policy it must be shown that such statements relied on were made with intent to deceive, that they related to matters intrinsically material to the risk, and that the insurer relied thereon.

4. *Same.*—Where the action is on an insurance policy, a ·plea alleging that insured stated in his application that he had no reason to believe that he was not in perfect health while at the time he was suffering from heart disease, that he knew he was suffering from the disease, that his answer was false, made with the intent to obtain the policy, and that insurer relied on the representation material to the risk sufficiently alleges the defense of fraudulent representation.

5. *Same.*—As. a defense to an action on a life insurance policy a plea setting up that the insured falsely represented to the insurer that he had no reason to believe himself not to be at the time in perfect health and safely insurable, that such representation was false in that insured was not at the time safely insurable, that insured knew the representation was false, that he made the same with the intent to deceive the insurer, that the representation was not known to be false to insurer, and that it was deceived thereby, and induced to execute the policy, when treated both by the trial court and the parties as presenting a sufficient answer to the complaint is sufficient to render evidence of fraudulent representation admissible, in that insured at the time suffered, to his knowledge, with heart disease, and that he made the representation with intent to deceive, and that insurer relied thereon.

[Empire Life Insurance Company v. Gee.]

6. *Same; Instruction; Jury Question.*—Where the issue was whether the death of the insured was due solely to accident within the terms of the policy, and the evidence thereon was conflicting, the question became one for the jury and the insurer was not entitled to instructions directing a verdict for it, or to instructions ignoring the disputed issue of fact.

7. *Appeal and Error; Harmless Error; Pleading.*—Where the same defense is available under pleas to which no demurrer was sustained, it was harmless error to sustain demurrer to pleas setting up the same defense.

8. *Same; Verdict; Conclusiveness.*—Where the verdict is on conflicting evidence, and is approved by the trial court, it will not be disturbed on appeal unless it appears that a palpable wrong has been committed.

9. *Evidence; Opinion; Expert.*—Where the issue was whether the insured's death was due solely to accident within the policy, it was proper to permit questions to practicing physicians as to whether or not, if insured received a blow on the chest of sufficient violence to knock him down and to discolor his chest, and to cause him to spit blood, the blow was the probable cause of the death of deceased, or the cause of a disease causing death.

10. *Charge of Court; Covered by Those Given.*—The court is not required to give requested charges substantially covered by requested charges given.

APPEAL from Dallas Circuit Court.

Heard before Hon. B. M. MILLER.

Action by Susan B. Gee against the Empire Life Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 171 Ala. 435, 55 South. 166.

The following pleas are directed to be set out:

(17) "For further answer to said complaint, and to each count thereof, defendant avers that insured made a written application to it for the issuance of said policy, and in said application he stated that he had no reason to believe that he was not in perfect health then and safely insurable; and it avers that at that time the said insured was not then in perfect health and safely insurable, in this: That he was then suffering from a disease of the aorta, the main artery to the heart, and that he then knew that he was suffering from said disease, and was not in perfect health and

safely insurable, and that said answer was false, and said insured then knew it was false, and it was made by him with the intent to obtain from defendant the issuance of said policy. And the defendant avers that when it issued and delivered said policy it had no knowledge that the said insured was then suffering from said disease, or that he was not in perfect health and safely insurable, and it did issue and deliver said policy relying on the truth of said answer of said insured."

(22) Adopts all the allegations of plea 17, with the averment that said misrepresentation is material to the risk.

(35) "In answer to the complaint, and each count thereof severally and separately, defendant says that plaintiff is not entitled to recover, for this: That prior to and as a part of the negotiations for the execution and procurement of the contract here sued on he, said W. H. Gee, falsely and fraudulently represented to this defendant that he had no reason to believe himself not to be at that time in perfect health and safely insurable; and defendant avers that said representation was false, and that said Gee was not at that time, nor was he at the time said policy was delivered, in perfect health and safely insurable, and that at said times said Gee had reason to believe he was not in perfect health and was not safely insurable. And defendant avers that at the time of said false representation the said Gee knew that said representation was false, that he made the same to defendant with the intent to deceive defendant, and with the intent that it should be acted on by defendant, and to induce defendant to execute the contract sued on; that said representation was not known by defendant to be false, and did deceive defend-

[Empire Life Insurance Company v. Gee.]

ant, and did induce defendant to execute the contract here sued on."

(37) "Comes the defendant, and for further answer to the complaint, and each count thereof separately and severally, says: That plaintiff ought not to maintain this suit, for this: That prior to and as a part of the negotiations for the execution and procurement of the contract here sued on the said W. H. Gee did represent that he had no reason to believe that he was not in perfect health and safely insurable; and defendant avers that at the time said W. H. Gee made said representation and at the time said policy was issued said representation was untrue, and said W. H. Gee knew it to be untrue, and that he was not in perfect health, nor was he safely insurable, and defendant avers that said misrepresentation was as to a matter that increased the risk of loss under said policy. Defendant further avers that neither at the time of said misrepresentation nor at the time said policy was issued did it know or have notice that said presentation was untrue, and it further avers that it was induced by said misrepresentation to execute said policy."

(40) "Defendant adopts all of plea 35, and avers, further, that said misrepresentation was made with the actual intent to deceive defendant, and was as to a matter that increased the risk of loss."

The following charges were refused the defendant:

(A) "I charge you that if it appears that said principal contract of insurance had not been in force when said accident occurred to said Gee, from the result of which the plaintiff claimed he died, the plaintiff cannot recover of the defendant in excess of $2,500 and the interest thereon."

(2) "I charge you that if you find from the evidence that said Gee had rheumatism at the time he made ap-

plication for said insurance, and at the time the said policy was issued to him, and that it was unknown to the defendant that he had such disease, then you must return a verdict in favor of the defendant."

(3) "If at the time of the delivery of the policy in suit the decedent, Gee, was suffering from an aneurism of the aorta, which afterwards contributed to his death, then he was at the time of the delivery of the policy in suit in unsound health, as required by the provisions thereof, and your verdict should be for the defendant. If you find that he had this disease, the evidence is for you, and if he knew it, and concealed it, when he was asked to reveal it, this point is affirmed. This question would be material to the risk."

(4) Same as 3, except that it places rheumatism in place of aneurism of the aorta.

(5) "I charge you that unless the death of Gee was the result, directly or independently of all other causes, of bodily injuries effected through external, violent, and accidental means, and unless such injuries happened 60 days or more after the date of said policy, then you cannot find a verdict for the plaintiff for exceeding $2,500."

(6) "Before you can find for more than $2,500, with interest from the date of death of Gee, the death of said W. H. Gee must have been the result of an accident happening 60 days from the date of said principal contract of insurance, from the date of its going into effect."

(7) "Plaintiff cannot recover under the accident feature of the policy, unless the accident happened 60 days or more after said policy went into force."

(8) "Plaintiff cannot recover double indemnity under said policy sued on, unless the death of said Gee was

the result of an accident happening 60 days or more after the date of the policy."

(13) "If at the time of the delivery of the policy Gee was suffering from an ailment which, if known to the company, would have caused the rejection of the risk, or the exaction of a higher rate of premiums, then, for the failure to communicate it to the company, it was not bound, and the verdict should be for the defendant."

(14) Same as 13.

(15) General affirmative charge.

(17) "If said Gee was suffering from rheumatism at the time he negotiated for and took out said policy, he was suffering from a disease which did increase the risk of loss under the said policy."

(41) "I charge you that the defendant is not liable in this case for the accident indemnity claimed by the plaintiff, unless the accident to said Gee, from which plaintiff claims his death resulted, occurred after said policy sued on had been in force for 60 days."

(42) "Gee was not indemnified against death by accident, unless the accident which caused the death occurred after said policy had been in force 60 days."

(43) "If Gee died as the result of an accident which occurred on June 4, 1910, then plaintiff cannot recover more than the sum of $2,500, with interest."

The following are the questions propounded to the experts Furniss and Kenan:

"I will ask you whether or not, if he had had a blow on the left side, on this particular vein, that was sufficient to color on the outside, whether or not, in your opinion, that could have caused the aneurism?

"I will ask you whether or not, if Dr. Gee, substantially 30 days prior to that, had had a blow on the chest sufficiently violent to knock him down, and sufficiently

violent to make his chest discolored, and to make him spit blood, and after that time he had fallen off 30 pounds in weight, that previous to that time he was in a healthy condition, then I will ask you whether or not that blow was the probable cause of the aneurism?"

Other similar questions were propounded to both witnesses, each of whom, the testimony showed, were regularly engaged in the practice of medicine.

MALLORY & MALLORY, for appellant. Appellant contends that the court erred in sustaining demurrer to special pleas 2, 3, 4, 5, 6, and 7, for the reason that the indemnity feature of the contract does not come into existence until the principal contract of the policy has been in force for sixty days. Pleas 13, 14, 18 and 19 are good, and demurrers should have been overruled. —*Vernuille's Case,* 47 South. 72; *Allen's Case,* 51 South. 873. Pleas 15, 20, 16 and 21 were good under the adoption of the above cited cases. Pleas 17 and 22 were clearly good.—*Allen's Case, supra.* Pleas 23, 24, 25, 26, 28, 29, 30 and 31 were not subject to the demurrers interposed to them.—Authorities supra. Pleas 38, 39, 43 and 44 fully met the requirement of sec. 4579, Code 1907. Counsel discuss the other pleas as well as charges refused, but without further citation of authority.

PETTUS, JEFFRIES, PETTUS & FULLER, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—Insurance policies, as a general rule, should be liberally construed, and the language used in them should usually be given its ordinary common interpretation. No strained or unusual construction should be given to any of the terms of a

policy of insurance, in favor of the insurer or of the insured; but when a clause in such a policy, when read in connection with all the other parts of the policy, is uncertain in its meaning, and is capable of two equally rational constructions, that construction should be placed upon the clause which is most favorable to the insured. These rules are so firmly fixed by our own adjudications, as well as by the decisions of the courts of last resort of our sister states that we deem it unnecessary to cite authorities to sustain them. They are, in truth, axioms of the law relating to the subject of insurance.

1. In the present case William Henry Gee insured his life with appellant for the sum of $2,500 in favor of his sister, Susan B. Gee. The policy was issued on April 22, 1910, and contained, among others, the following provisions:

"Guaranteed Perfect Protection.

"(A) During the premium payment period, after this policy has been in force 60 days, subject to the limitations hereinafter stated, if the principal contract is in force, the insured will be indemnified against *death* or *loss of time* as follows:

"(1) The company agrees to pay the beneficiary double the amount insured by the principal contract hereunder, or ($5,000.00) five thousand dollars, in discharge and satisfaction of all claims under this policy, provided the insured dies as the result, directly or independently of all other causes, from bodily injuries effected through *external, violent,* and *accidental means,* and provided death occurs within *ninety* days after receiving injury causing death.

"Total Disability Benefit.

"(2) Upon satisfactory proof to the company that the insured has, as the result of disease contracted *during the term of this policy,* and not hereinafter excepted, entirely and irrevocably lost the sight of both eyes, or permanently and entirely lost the use of both feet, or of one hand and one foot, and also that the insured has been for one year, and will thereafter and during the insured's life, by reason thereof, be permanently disabled from engaging in any work or occupation for wages or profit, the company will pay the insured ($1,250.00) twelve hundred fifty dollars. The payment for permanent disability shall end this policy.

"Weekly Sickness Indemnity.

"(3) For a period not less than one week, *commencing* on the day on which the *notice of sickness* is mailed to the company, and not more than twenty-six weeks in any one year, during which the insured, directly and indirectly of all other causes, shall be continuously and wholly disabled, being actually confined to bed or room and under the direct daily personal care of a regularly licensed physician, and prevented by bodily disease from transacting any and every kind of business, the company agrees to pay the insured a weekly indemnity of ($12.50) twelve and 50/100 dollars.

"Weekly Accident Benefit.

"(4) For a period of not less than one week, *commencing* with the day on which *notice of accident* is mailed to the company and not more than twenty-six weeks in any year, during which the insured, directly

and independently of all other causes, shall be continuously and wholly disabled, being actually confined to bed or room and under the direct daily personal care of a regularly licensed surgeon, and prevented by bodily injury, effected through external, violent, and accidental means, from transacting any and every kind of business, the company agrees to pay the insured a weekly indemnity of twelve and 50/100 dollars."

We have above copied in full (the italics being ours) the four provisions in the policy for which "Guaranteed Perfect Protection" is furnished, for the purpose of emphasizing our statement that, while this "Guaranteed Perfect Protection" is suspended, by the express terms of the policy, for a period of 60 days from the issuance of the policy, there is nothing to indicate that it was the purpose of the insurer or of the insured to declare that the *cause* of the death or loss of time for which the "Guaranteed Perfect Protection" must be furnished might not originate within the first 60 days next after the issuance of the policy. *Death* or *loss of time,* occurring within the first 60 days after the issuance of the policy is expressly exempted from the special provisions grouped under the title "Guaranteed Perfect Protection," and for the insurance provided for such *death* or *loss of time* the other general provisions of the policy must be looked to and must control. The accidents and disabilities referred to in the above-quoted subdivisions of the policy were, of course, those to arise *after* the insurance was perfected; but, applying the rules of construction which we announced at the opening of this opinion to the policy in question and to the clauses under discussion, we can see no reason why a death, occurring from such an accident as is described in subdivision (1) within 90 days after such accident and more than 60 days after the issuance of the policy,

is not covered by the insurance provided for in said subdivision (1), although the accident may have occurred within the first 60 days after the issuance of the policy. A casual reading of the above-quoted subdivision (2) will emphasize the correctness of this position. In that subdivision the thing insured against is loss of time occasioned by a certain physical condition created by disease contracted "during the term of this policy," and while, under the express terms of that subdivision, the disease might originate, and the physical condition insured against actually exist, during the first 60 days after the issuance of the policy, the *loss of time* occasioned thereby does not begin to run, and compensation therefor, under said subdivision, does not commence, until after the expiration of said first 60 days. In subdivision (1)—the subdivision of special interest in this case—the thing insured against is *death* caused solely by a certain character of accident *occurring* within *ninety* days after the *accident* and *more* than *sixty* days *after* the issuance of the policy. *When* the *accident,* the sole cause of death, was to occur, the clause does not say. It does say when the *death*—the thing insured against—is to occur; and, if it had been the intention of appellant to insure only against death by accident, the *accident* as well as the *death* to occur more than 60 days after the issuance of the policy, it could easily have said so in plain words, and, having failed to do so, it is not for us to add those words to the policy, nor to change or alter the contract of insurance which the parties themselves have made.— *Rorick v. Railway Officials' & Employees Acc. Ass'n,* 119 Fed. 63, 55 C. C. A. 369; *General Accident & Life Assur. Cor. v. Meredith,* 141 Ky. 92, 132 S. W. 191.

In the present case, according to the verdict of the jury, William Henry Gee was injured, externally, vio-

lently, and accidentally on June 4, 1910, less than 60 days after the issuance of the policy, and died, according to the finding of the jury, solely as the result of that accident on July 9, 1910, *more than sixty* days after the accident. It is therefore apparent that, if the verdict of the jury was a correct finding under the conflicting evidence in this case, the death of William Henry Gee was covered by the letter of the above-quoted subdivision (1), and that the appellee was entitled, so far as this phase of the case is concerned, to the double liability provided for in said subdivision.

2. To the complaint the appellant filed many pleas, setting up, in various ways, that William Henry Gee, in negotiating for said insurance policy, made certain false representations as to his past and (then) present physical condition, and that, by reason of such false representations, he induced the appellant to issue the policy. There was, however, filed by the appellant no plea of a breach of warranty by the said William Henry Gee, and all that is hereafter said with reference to the pleadings is referable solely to pleas setting up, as a defense to an action brought to recover the amount of an insurance policy, false representations made by the assured to the insurer, in the procurement of the policy.

The specific matters set up by the pleas of false representations on the part of William Henry Gee in the procurement of the policy were, first, that he falsely represented that he was not suffering from a certain disease of the heart, when in fact he was so suffering; second, that he falsely represented that he had never suffered from rheumatism, when in fact he had so suffered; third, that he falsely represented that he had never suffered from any disease of the urinary organs, when in fact he had suffered from gonorrhoea. "Where fraudulent representations are pleaded in defense to

an action on a policy of insurance, it must be shown that false statements have been made with an *intent to deceive,* that they related to matters *intrinsically material* to the risk, and that the insurer relied on them. This rule has not been changed by statute or decision." —*Empire Life Ins. Co. v. Gee,* 171 Ala. 435, 55 South. 166.

3. Plea 22, when read in connection with plea 17 (both of which pleas the reporter will set out), met the requirements of the above rule, and the trial court might well have overruled the appellee's demurrer to said plea. We are of opinion, however, that the defense set up in that plea could have been made under pleas 35, 37, and 40; and, as the bill of exceptions discloses that the defense so set up in said plea was treated during the progress of the trial as available to appellant, we are of opinion that no injury was done appellant by the trial court in sustaining the demurrer to plea 22. Pleas 35, 37, and 40 (which the reporter will also set out) may have been demurrable, because they failed to particularize the disease with which William Henry Gee is alleged to have been suffering when he procured the policy (see *Empire Life Ins. Co. v. Gee, supra*); but they were treated by the trial court and the parties to the cause as presenting sufficient answers to the complaint, and under those pleas the special disease of the heart set out in plea 22 might well and could properly have been shown, and that, too, with no burden which the pleader had not assumed in said plea 22.

Under the above pleas, and under pleas 36, 41, 42, 43, and 44, upon which, along with others, the case was tried, no burden was placed upon appellant greater than was placed upon it by the above-quoted rule, and under them every defense as to false representations

in the procurement of the policy of insurance, which was sought to be interposed to the complaint by the pleas to which demurrers were sustained, was available to the appellant. We are therefore of opinion that the action of the trial court in sustaining the appellee's demurrers to certain of appellant's pleas was without injury to appellant.

4. The appellant offered no evidence whatever tending to show that Wiliam Henry Gee made any statement of any sort, to appellant or to any of its agents, as to his physical condition at or prior to the time of the issuance of the policy, or that he in any way misrepresented his physical condition to appellant at that time, or at any other time. As the death of William Henry Gee admittedly occurred on July 9, 1910, the appellee was therefore, as to all matters at issue between the parties, entitled to the general affirmative charge, except as to the single issue as to whether death was due solely to an accident provided for in subdivision (1) above quoted, or to disease not caused solely by such accident. The question as to whether the death was or was not due solely to accident, within the meaning of said subdivision (1), was a disputed issue of fact, and was for the determination of the jury. It is therefore evident that the trial court committed no error in refusing to give charges A, 2, 3, 4, 5, 6, 7, 8, 13, 14, 15, 17, 41, 42, and 43.

5. The other charges, requested in writing by the appellant and refused by the court, were either covered by written charges that were given to the jury or are not insisted upon by counsel for appellant in their briefs. The assignments of error touching the written charges given by the court at the request of appellee are, in effect, abandoned by counsel for appellant in their briefs.

6. The questions propounded to the experts, Furniss and Kenan, and here assigned as error, were admissible.—*Stickney v. Dunaway & Lambert,* 169 Ala. 464, 53 South. 770; *Howard v. State,* 108 Ala. 571, 18 South. 813.

7. In the written charges which were given by the court to the jury, the law, so far as the question of liability vel non of appellant to appellee for the amount of the face of the policy ($2,500) was concerned, was more favorable to appellant than the evidence warranted. On the question of double liability—liability for $5,000 under the above-quoted subdivision (1)—the law, as expressed in the written charges given to the jury, was plainly and correctly expressed. The only issue for the jury under the evidence as set out in the bill of exceptions was whether appellant was liable to appellee under the provisions of said subdivision (1). That issue was a disputed issue of fact, for the determination of the jury alone, and the jury determined that issue in favor of the appellee. The trial judge refused to set the verdict of the jury aside, and as we are not able to say, after carefully considering all the evidence set out in the bill of exceptions, that, in rendering a verdict for appellee for double the amount of the face of the policy, the jury did the appellant a palpable wrong, we are not disposed to disturb the judgment of the trial court pronounced upon the verdict.

Let the judgment of the court below be affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.