(96 South. 409)

**KILLIAN et al. v. TRIGG, DOBBS & CO. et al. (7 Div. 347.)**

(Supreme Court of Alabama. May 3, 1923.)

1. **Equity** &roedist;148(3)—Bill held not multifarious because prayers not in alternative.

Where a bill by creditors prayed that a transaction be declared fraudulent and void as to them, and in a separate paragraph that it be declared a general assignment, it was not multifarious because the prayers were not in the alternative.

2. **Assignments for benefit of creditors** &roedist;15—Transfer by debtor held to create preference in creditors and amount to a general assignment.

Where one of two creditors took over the major part of the stock of goods of debtor as stock consigned to him by the debtor for resale and remainder of the stock, thus reduced below the amount allowed as personal exemptions, was sold to the other creditor or to both of them for a named sum in cash presently paid, notwithstanding that the face of the bills of goods taken over by the creditor was marked "consigned to" the named creditor, evidence *held* to show the transaction to be a transfer by debtor of all his property to these creditors in preference of others and was a general assignment under Code 1907, § 4295.

Appeal from Circuit Court, De Kalb County; W. W. Haralson, Judge.

Bill of Trigg, Dobbs & Co. and others against M. H. Killian and others. From a decree for complainants, respondents appeal. Affirmed.

Isbell & Scott, of Ft. Payne, for appellants.

The transaction was not a general assignment in favor of creditors. The goods shipped by defendants to the debtor were not sold, but were consigned, as shown by the bills rendered by defendants to the debtor. Nelson Mfg. Co. v. Menge & Sons, 142 La. 664, 77 South. 494; 6 A. & E. Ency. Law (2d Ed.) 798; Powell v. Wallace, 44 Kan. 659, 25 Pac. 42; Dittmar v. Norman, 118 Mass. 324; 8 Cyc. 587; Black's Law Dict. 256.

C. A. Wolfes, of Ft. Payne, for appellees.

The transaction was a general assignment for the benefit of all creditors. Code 1907, § 4295; Baker v. Gate City Co., 203 Ala. 6, 81 South. 674; Burnwell Coal Co. v. Setzer, 203 Ala. 395, 83 South. 139. Sale of the entire stock in the usual course of business is presumed fraudulent and void as to creditors. Acts 1911, p. 94. And the use of the word "consignment" does not determine the character of the contract. Ferry & Co. v. Hall, 188 Ala. 178, 66 South. 104, L. R. A. 1917B, 620.

SAYRE, J. [1] Appellants Killian and Jackson took over the entire stock of goods of R. H. Griggs, a merchant, in satisfaction of claims they had against him, after which creditors filed this bill on behalf of themselves and all others who might come in, praying that the transaction be declared fraudulent and void as to them and, in a separate paragraph, that it be declared a general assignment. These prayers should have been in the alternative, but no objection was taken against the bill on account of this defect. The bill was not multifarious. Smith v. Young, 173 Ala. 190, 55 South. 425; Hard v. American Trust, 200 Ala. 264, 76 South. 30; Burnwell Coal Co. v. Setzer, 203 Ala. 395, 83 South. 139. In the trial court relief was decreed in accordance with that prayer

of the bill noted in the second place, supra, and defendants were allowed "to have their own bona fide claims against Griggs treated and considered just as the claims of any creditors," thus reducing the quantum of relief that would have been available to the complaining creditors had relief been awarded under the first alternative prayer; but of this appellees have not complained.

[2] Griggs was indebted to both Killian and Jackson for merchandise sold by them to him. Their scheme was for Killian to take over the major part of the stock of Griggs as stock consigned by him to Griggs for resale by the latter, the former having retained title until the goods might be resold. The remainder of the stock, thus reduced below the amount of the personal exemption allowed under the Constitution and laws of the state, was sold to Killian and Jackson, or to Killian for himself and Jackson, for $1,000 presently paid.

We are reasonably clear to the conclusion that the defense thus interposed cannot be maintained and that the chancellor was right in decreeing the transaction to be a transfer by the debtor Griggs of all or substantially all of his property for the security of defendants in preference to other creditors; in short, a general assignment under section 4295 of the Code of 1907. True, across the face of the bills of goods shipped by Killian to Griggs from time to time were written— or perhaps partly written and partly printed —the legend, "Consigned to R. H. Griggs. Colbran, Ala." But there is no magic in mere words, and this court has held, in a case where the contract very closely approximated the terms of the contract here, that the transaction so evidenced was not a consignment creating the relation of principal and agent, but vested title in the retailer upon delivery to him. D. M. Ferry & Co. v. Hall, 188 Ala. 178, 66 South. 104, L. R. A. 1917B, 620. The case here, however, is a stronger case on the evidence, for here, we are confident, there was no effort made by Griggs, or expected by Killian, to preserve the identity of the goods shipped to Griggs. Most likely it was not possible on the day of the transaction between defendants and Griggs to identify the goods shipped from Killian's store at Portersville in De Kalb county to Griggs' store at Colbran, consisting of hundreds of such articles as are kept in a country store, commingled with other hundreds of the same general character. At any rate, the goods were not marked for identification when shipped and no separation was attempted until they had been delivered en masse to Cash, to whom Killian and Jackson sold them while they were yet in the possession of Griggs. And Killian in his testimony, speaking of the contract under which he let Griggs have goods, used an expression

which shows that Griggs was his vendee, not his agent. He said, "I agreed to take back the goods at invoice prices." But, of course, prices were nothing to him if the goods he was to take back were his goods, not Griggs'. There is other testimony in the record tending to show that the chancellor's decree was well grounded in fact—indicia of fraud going to show that the effort was to circumvent the other creditors of Griggs, the testimony of witnesses from which it is to be inferred that defendants were conscious of the fact that they had engaged in a transaction that would not bear close scrutiny, that they must have known they were getting goods which Griggs had recently received in considerable volume from other creditors, that they undervalued the goods they got—for nothing of which would there have been necessity or occasion had the transaction been in fact what they sought to make it appear to be; but it is not considered necessary to enter here upon a more detailed discussion of the evidence. We have stated our conclusion with reference to the only point urged against the decree.

Affirmed.

McCLELLAN, GARDNER, and MILLER, JJ., concur.