160 So. 713

### EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. WATTS.

6 Div. 697.

Supreme Court of Alabama.

March 21, 1935.

Rehearing Denied April 25, 1935.

Howze & Brown, of Birmingham, for appellant.

Perry & Powell, of Birmingham, for appellee.

**BOULDIN, Justice.**

The disability benefit sued for was payable "In the event that any employee while insured under the aforesaid policy and before attaining age 60 becomes totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement."

■ Count A, on which the case was tried, averred such disability arose on to wit, June 24, 1931, while insured was in the employ of Sloss Sheffield Steel & Iron Company, the employer, holding the group policy, because of chronic asthma, chronic arthritis, and hypertension (high blood pressure).

Upon careful consideration of the evidence, we are of opinion it made a case for the jury on this issue.

Evidence tended to show the insured to be a negro laborer, 57 years of age, employed as a coal miner, taken out of the mines in the spring of 1931 because of disability, and put to light outdoor work, clean-up work, cutting weeds, removing litter, etc., and finally laid off June 24, 1931; that later he was assigned to CWA work relief, where his duties were "toting water." Further testimony tended to show such work was performed intermittently with pain and exhaustion, with continuing rales, symptoms of asthma. Competent medical authority reported total disability as per the complaint in the fall of 1932. There was conflict in professional opinion as to his condition, some on examinations at different periods, and some conflict as to condition about the time of the trial.

■ The mere fact that, when not suffering an acute attack of asthma, he could and did, up to the time of trial, perform some such work, would not justify an affirmative instruction for defendant. If work is accompanied by suffering, aggravation of a chronic disease, in such sort that sound medical advice says not to work, the fact that there is still strength to do it at times, and, under stress of circumstances he does so perform, will not defeat his right to the total permanent disability benefit under stipulations here presented. New York Life Ins. Co. v. Torrance, 228 Ala. 286, 153 So. 463; Id., 224 Ala. 614, 141 So. 547; Equitable Life Assur. Soc. v. Dorriety (Ala. Sup.) 157 So. 59 [1]; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; United States Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 462; Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909; New York Life Ins. Co. v. McLean, 218 Ala. 401, 118 So. 753.

■ The trial court, in his oral charge, defined permanent total disability, as applied to this case, in these words: "Now, permanent disability, within the meaning of this policy, does not mean, does not require a state-(ment) of absolute helplessness. In other words, it does not mean that a man must be absolutely helpless, but here is what it means: It means the inability to do substantially all of the material acts necessary to prosecution of some occupation for which the plaintiff is fitted by training and experience. * * * and it means permanently disabled as distinguished from temporary disability, it means permanently disabled and that he will be disabled from now on * * * presumably for the rest of his life."

This instruction sufficiently covered the subject, and was as favorable to defendant as the law of the case warranted. Authorities, supra.

■ For this reason written charges refused to defendant present no reversible error. These charges had some misleading tendency in ignoring evidence tending to show manual labor, the only work the insured could do so far as appears, could only be done with harmful results in his diseased condition.

■ By special pleas defendant set up a breach of the stipulation whereby no benefit should accrue unless the insured, within one year from the commencement of the disability, furnish the insurer proof of such disability.

To this defense plaintiff filed replication No. 3, saying: "Plaintiff avers that after due proof of his disability had been furnished defendant by plaintiff, in writing, and received by defendant and while defendant knew such

proof was not filed within one year after the commencement of plaintiff's said disability and while and at a time when defendant knew that plaintiff had been so disabled for more than one year, the defendant requested the plaintiff to submit himself to defendant's doctor for a physical examination and thereupon plaintiff did so submit to such examination after the defendant had received said due proof of plaintiff's disability and the defendant after said physical examination had been so made at the time and in the manner aforesaid by its doctor, declined and refused to pay plaintiff said claim so filed for benefits under the provisions of said policy sued upon basing its refusal and denial to so pay upon the sole ground that the plaintiff was not permanently and totally disabled, and hence plaintiff says that the defendant thereby waived the matters and things set out in said pleas, separately and severally."

This replication was fully supported by evidence, consisting in much of correspondence between plaintiff's counsel and defendant, resulting in final refusal on January 26, 1933, to pay on the sole ground that the insured is not totally and permanently disabled under the terms of the policy.

In one respect, the above statement is subject to qualification.

In the proof furnished, leading to the further examination, etc., the date of disability is stated as "June 24th, 1932," instead of "June 24th, 1931," as averred. This same statement, however, named the latter date, June 24, 1931, as the last day on which plaintiff worked for his employer, with a further statement, "I quit working on June 24, 1931. I did not feel able to work." This proof was furnished October 25, 1932.

Obviously, if the insured took the proof to mean the disability arose in 1932, it would show a claim for disability occurring after the insurance ceased to be in force, a disability not covered by the policy at all.

Under all the circumstances, it was a question for the jury to determine whether defendant had the knowledge averred at the time of refusing payment on the sole ground of no disability, and waived the stipulation set up in the plea. Travelers' Ins. Co. v. Plaster, supra.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

