WORLD INSURANCE COMPANY,
Appellant,

v.

Francis E. HALL, Jr., Appellee.

No. 23430.

United States Court of Appeals
Fifth Circuit.

Aug. 28, 1967.

* Of the Fifth Circuit, sitting by designation.

Alex T. Howard, Jr., Mobile, Ala., for appellant.

Mitchell G. Lattof, Ross Diamond, Jr., Mobile, Ala., for appellee.

Before GEWIN and AINSWORTH, Circuit Judges, and HUNTER, District Judge.

GEWIN, Circuit Judge:

Francis E. Hall, Jr. brought an action in the Circuit Court of Mobile County, Alabama, against World Insurance Company to recover damages resulting from an alleged breach of two insurance policies issued to Hall by World Insurance. On petition of World Insurance the case was removed to the United States District Court for the Southern District of Alabama on the basis of diversity jurisdiction. The jury found that $8,379.14 in disability payments were due and owing to Hall and a judgment was rendered against World Insurance for that amount. This appeal followed and we affirm.

During Hall's childhood he contracted osteomyelitis in his right leg. The disease was eventually arrested but it left his right knee stiff and his right leg approximately 2½ or 3 inches shorter than his left leg. However, Hall was able to walk without the aid of therapeutic devices.

Hall completed two years of college work in preradar engineering and in 1951 he became employed at Brookley Air Force Base as a journeyman working in the field of electrical mechanical transmission and reception of pictures by radio or wire, which involved processes for revolving electric current. Subsequently he went into the installation and repair of electrical equipment on airplanes. In 1961 he was transferred with his entire unit to Keesler Air Force Base in Biloxi, Mississippi, where he continued to do the same type of electronic work on radar installations. He was actively engaged in his employment when he was injured as the result of an automobile accident on June 17, 1963.

In 1951 Hall purchased from World Insurance Company a disability policy which provided monthly benefits for injury resulting in total disability and additional monthly benefits for hospital confinement. The policy contained an elimination endorsement which read as follows:

"By reason of prior history of Osteomyelitis of right leg this policy is issued with the understanding that neither the holder of this policy nor the beneficiary shall be entitled to any benefits for loss caused or contributed to by injury to or disease of the right leg all of which the Insured agrees to by the acceptance of this policy."

In 1962 Hall purchased a second disability policy from World Insurance, the terms of which were essentially identical to the first policy and which also contained the quoted elimination endorsement. Since the dates of issuance of the two policies, Hall has regularly paid the premiums when due.

On June 17, 1963, Hall was involved in an automobile accident from which he allegedly sustained head injuries and further damage to his right leg, and was hospitalized for 69 days. As a result of the accident he was unable to return to work at Keesler Field. He made demand upon World Insurance for disability benefits payable under the two policies and payment was refused.

In his complaint Hall alleged that the injuries he sustained by reason of the automobile accident had rendered him totally disabled and therefore he was entitled to disability benefits under the two policies. World Insurance answered this allegation by claiming that the elimination endorsement precluded recovery of benefits under either policy, and further that Hall misrepresented to World Insurance in his application for the second policy, that he had never had any heart trouble when in fact he had suffered a cardiac arrest and that such misrepresentation was relied upon in the issuance of the policy.

At trial Hall contended that the elimination endorsement would only preclude recovery if it took both the injury to his leg and the injury to his head to render him totally disabled, and consequently, he would be entitled to benefits if his total disability resulted solely from his head injuries. World Insurance submitted that there could be no recovery under the terms of the policy because Hall had sustained an injury to his right leg which contributed to his overall disability. The district court adopted Hall's construction of the elimination endorsement and charged the jury:

"Now, he claims that he is totally disabled, because of brain injury sustained in this accident. If he is totally disabled because of brain injury sustained in that accident, he is entitled to recover. Now, this indorsement says 'contributed to by injury to or disease of the right leg.' Well, he has got an injury to his leg. Now, if the brain damage alone, exclusive of the leg, would make him permanently disabled, as I have explained to you, where it resulted from this accident, he is entitled to recover, even though his leg

also got injured in the accident. If it takes the leg injury plus the head injury to make him totally disabled, then, he is not entitled to recover, but, if the head injury, standing alone, makes him totally disabled, the fact that the leg also contributed to it would not void the policy."

The jury returned a verdict in favor of Hall.

On appeal World Insurance contends that the district court's interpretation of the endorsement is erroneous. Further, it submits that the court erred when it gave the jury additional instructions, after they had deliberated for some time, which over emphasized its minor defense of misrepresentation at the expense of its main defense that Hall's total disability was contributed to by injury to his right leg. Finally, World Insurance contends that the trial judge erred in refusing to grant its motions for a directed verdict made at the conclusion of Hall's case and at the conclusion of the entire testimony.

■ The language employed in insurance policies must be given its ordinary and generally understood meaning. In the case of American Fidelity & Casualty Co., Inc. v. St. Paul-Mercury Indemn. Co., 248 F.2d 509 (5 Cir. 1957) this court approved the rule of construction set forth by the Supreme Court of Alabama in Empire Life Ins. Co. v. Gee, 178 Ala. 492, 60 So. 90, 92 (1912) where it stated:

"Insurance policies, as a general rule, should be liberally construed, and the language used in them should usually be given its ordinary common interpretation. No strained or unusual construction should be given to any of the terms of a policy of insurance, in favor of the insurer or of the insured * *."

See also Commercial Standard Ins. Co. v. New Amsterdam Cas. Co., et al., 272 Ala. 357, 131 So.2d 182 (1961).

■ We find World Insurance's restrictive interpretation to be both strained and unreasonable. The policies in question provided monthly disability benefits in the event the insured became totally disabled. In light of the fact that Hall had a severely crippled right leg, there existed the great possibility that further injury or disease to the right leg would render Hall totally disabled. Consequently, the endorsement was included in the policies to eliminate the risk that Hall would become totally disabled solely or in part by further injury to his right leg. Therefore, we think the common and ordinary meaning of the language of the endorsement that Hall "shall [not] be entitled to any benefits for loss caused or contributed to by injury to or disease of the right leg" is that Hall may not recover benefits if the injury to his right leg received in the 1963 automobile accident contributed to his total disability and that total disability would not exist in the absence of such leg injury. Conversely, if Hall was totally disabled without taking into account the further injury to his right leg, he may recover benefits, for such further injury did not contribute to or cause his total disability. It would be highly unreasonable to conclude that the provision eliminated World Insurance's responsibility if Hall was rendered totally disabled by injuries to his head, if at the same time he also suffered an injury to his right leg, because such injury to his right leg would not have contributed to Hall's claimed disability. The endorsement specifically requires and clearly must be construed to mean that the injury to his right leg must contribute to or cause the claimed total disability before payments may be withheld by the insurer.

We find no fault with the trial court's additional instructions to the jury. The further instructions were occasioned by the fact that after deliberating approximately 30 minutes, the jurors approached the judge and inquired about the computation of damages. The judge answered their questions and due to the lateness of the hour they were dismissed for the day. The following morning the judge gave the jurors the additional instructions about which complaint is made. Essentially these instructions contained information on computation of the monthly payments provided for in the

two disability policies. However, these instructions also covered the issues previously submitted to the jury by the trial judge's original instructions, such as World Insurance's claim that Hall misrepresented a material fact in his application for the second disability policy, Hall's claim that he was totally disabled, and his claim that the injury to his right leg did not contribute to his claimed total disability. World Insurance contends that these instructions over-emphasized the misrepresentation issue. We fail to see how these additional instructions distorted the importance of the questions presented. We have carefully read this charge to the jury and we are convinced that it did not give greater emphasis to the misrepresentation issue at the expense of the other questions submitted to the jury. In fact we find these instructions to be clear, impartial and fully relevant to the issues involved.

■■ The trial court properly denied World Insurance's motions for a directed verdict. It is well settled that such motions could only have been granted if the testimony and all the inferences which the jury could justifiably draw therefrom were insufficient to support a finding for Hall. Independent Iron Works, Inc. v. United States Steel Corp., et al., 322 F.2d 656 (9 Cir. 1963); Continental Cas. Co. v. Holmes, et al., 266 F.2d 269 (5 Cir.) cert. den. 361 U.S. 877, 8 S.Ct. 140, 4 L.Ed.2d 114 (1959); Albaugh v. Pennsylvania R.R. Co., 120 F. Supp. 70 (D.C.1954), aff'd 219 F.2d 764 (1955). The testimony in the instant case was both adequate and sufficient to support a verdict in favor of Hall.

■ Under Alabama law one is totally disabled when he cannot substantially perform the material duties of some occupation for which he is qualified by experience and training. Wilkey v. Aetna Life Ins. Co., 269 Ala. 308, 112 So.2d 458 (1959); Equitable Life Assur. Soc. v. Watts, 230 Ala. 297, 160 So. 713 (1935). Hall testified that after his accident on June 17, 1963, he was no longer able to perform his work in the field of electronics for which he had been trained and for which he was employed. Such testimony is not disputed. As a matter of fact we do not understand World Insurance to seriously dispute the fact that Hall is totally disabled.

The record contains conflicting testimony on whether Hall's total disability occurred by virtue of head injuries suffered at the time of the accident or from the further injury to his right leg. Hall testified that he could no longer work because of extreme headaches, dizziness, inability to distinguish colors and blurring of vision which prevents him from distinguishing objects. At one point he made the following statement:

"I have very little use of my right leg, and I can only wear the brace that I walk round on for a time, it makes my leg sore, and I cannot wear it all the time. I cannot do the type of work that I was doing. That is why I no longer work at Brookley Field [sic]. I have extreme headaches all the time. I say all the time but not constant, but when I go to bed with them I nearly always have them when I wake up. I am free of them in the day sometimes, they come back on me, not back all at once, but they just keep getting where I have them every day."

Hall also testified that he thought his inability to get around as well as he used to would be a material factor in his employability. But in answer to the question, Is the type of work you do performable by sitting, Hall stated, "Absolutely."

Dr. W. C. Hannon, an orthopedic surgeon, who treated Hall during his hospitalization subsequent to his automobile accident and had in fact treated Hall for more than thirty years, testified that Hall had "definite intercranial lesion" following the accident and that this was responsible for his present difficulties such as the severe headaches and dizziness. Dr. Hannon further testified that Hall suffered a 50% permanent, partial disability of his body as a whole attributable to his automobile accident and that of such 50% approximately 35 to 40 percent was attributable to his head injury

and approximately 10 to 15 percent to injury to his right leg.

Dr. H. C. Mostellar, a neurosurgeon, testified as a medical expert for World Insurance. Dr. Mostellar examined Hall on at least three different occasions while he was in the hospital following the automobile accident and from his tests and examinations he found no brain damage which was attributable to the accident. He did find, however, that Hall had a minimal diffuse encephalopathy which caused his slurriness and hesitancy of speech but he attributed this condition to a cardiac arrest and not the 1963 accident. Mostellar testified that Hall had informed him of a cardiac arrest which took place during an operation on his right leg "several or seven" years ago. However, there was some doubt as to whether Hall had actually had a cardiac arrest, as will be discussed later in this opinion, and Dr. Mostellar admitted that if Hall had never had a heart arrest, his opinion as to what caused his brain damage would obviously have to be changed.

Even though the testimony of the two doctors is highly conflicting, one finding that the accident caused brain damage and the other finding no brain damage occurring as a result of the accident, we think the evidence presented is unquestionably capable of supporting a finding that Hall sustained brain damage as a result of the accident and further that such brain damage caused Hall's total disability.

The cardiac arrest testified to by Dr. Mostellar is the basis of World Insurance's claim that Hall misrepresented a material fact in his application for the second disability policy. This application contained the question, "Have you ever had, or ever been told that you had any one or more of the following: (d) Heart trouble, high blood pressure, hemorrhoids, varicose veins, or other diseases of the blood or blood vessels?" Hall answered this question, "No."

As a matter of fact, Hall thought he had suffered a heart arrest at the age of 13 while he was in the Children's ward at the Mobile Infirmary undergoing an operation on his right leg. He testified that a young nurse told him that his heart had stopped beating but they had started it back again. However, Hall testified that he did not remember telling Mostellar that he had had a heart arrest. Also Dr. Hannon, Hall's attending physician, testified he had no record nor any knowledge of this fact.

Be that as it may, Hall testified that, as far as he knew, the fact that his heart stopped and was started back again was not a heart disease. He also stated that he gave true answers on the application to the best of his knowledge. Such evidence was certainly sufficient for the jury to determine that Hall did not wilfully deceive World Insurance or misrepresent a fact which increased the risk of loss under the policy.

Finding no error, we affirm.

Judgment affirmed.