160 So. 776
**EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. GARRETT.**
**8 Div. 101.**

Court of Appeals of Alabama.
March 26, 1935.

Rehearing Denied April 16, 1935.

Howze & Brown, of Birmingham, for appellant.

**396**

H. H. Hamilton, of Russellville, for appellee.

SAMFORD, Judge.

This is the second appeal in this case. Equitable Life Assur. Soc. v. Garrett, 25 Ala. App. 446, 148 So. 338.

The plaintiff was insured under a group policy issued by the defendant to the Sloss-Sheffield Steel & Iron Company covering the employees of said company, under conditions named in the policy not here necessary to be set out.

On the 1st day of January, 1931, the Equitable Life Assurance Society of the United States issued a policy insuring all of the employees of the Sloss-Sheffield Steel & Iron Company who elected to participate in the group life insurance plan. The appellee elected to participate in this plan, and on the 16th day of January, 1931, the Equitable Life Assurance Society of the United States issued to the appellee a certificate stating that he was insured under the master policy issued to the Sloss-Sheffield Steel & Iron Company. The master policy and also the certificate of insurance issued to the appellee provided that in the event the appellee, while insured under the policy and before he attained the age of sixty, became totally and permanently disabled by bodily injury or disease and would thereby presumably be prevented for life from engaging in any occupation or performing any work for compensation of financial value, the Equitable, upon receipt of due proof of such disability, would pay to the appellee $500 in ten monthly installments of $50.35 each. The policy and the certificate further provided that the insurance should automatically cease upon the termination of appellee's employment with the Sloss-Sheffield Steel & Iron Company.

The first assignment of error insisted on in brief is the refusal of the trial court to give at its request the general affirmative charge.

It is not disputed that prior to May 18, 1931, the plaintiff was an employee of the Sloss-Sheffield Steel & Iron Company, and, as such employee, was entitled to the protection provided for in the master policy. It is contended, however, that on May 18, 1931, plaintiff was "laid off" or discharged by the Sloss-Sheffield Steel & Iron Company, and that automatically the liability of the defendant ceased, and it is further contended that on said date plaintiff was not totally disabled, according to the terms of the policy. On this point the plaintiff testified that he was not discharged or "laid off," but that on May 18, 1931, he quit work on account of his inability physically to perform his work, that at the time he was totally and permanently disabled by reason of disease and could not further carry on any work of financial value. Dr. Harris, a qualified physician, testified that some time after May 18, 1931, which time was fixed at sixty days by the defendant, he examined plaintiff and found him affected with a disease called senility, which disease rendered plaintiff incapable of performing any work of a gainful nature, and that such disability was permanent, and this doctor gave it as his opinion from that examination and his observation of plaintiff as his family physician prior to that time that this plaintiff was permanently and totally disabled in May, 1931, as the result of senility, .which he classed as a disease. Dr. Harris, who testifies as an expert, says positively that as a result of senility, which is a disease, this plaintiff in his opinion was unable to work from this disease in May, 1931, and that he continued in this condition.

According to American Medical Dictionary, senility is the feebleness of body and mind incident to old age. According to Corpus Juris, vol. 57, page 126, it is a state of mental impairment resulting from old age, and according to Black's Law Dictionary, it is: "Incapacity to contract arising from the impairment of the intellectual faculties by old age." According to Webster's Dictionary, senility is a disease and it would seem that when the senility is premature, as in this case, it may be so classed. But, whether senility is a disease or a symptom is of no moment here. If it is a disease causing total disability or the symptom of a disease causing the same disability, it comes to the same thing.

So according to the testimony for plaintiff, there was testimony from which the jury could legally infer that, before attaining the age of sixty, plaintiff became totally and permanently disabled by bodily injury or disease, and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation or financial value, and that he became so disabled while he was in the employ of the

Sloss-Sheffield Steel & Iron Company and protected by the policy of insurance.

But, says the defendant, if there was a scintilla of evidence which, under the decisions, would prevent the giving of the general charge in its favor, then it says the overwhelming weight of the evidence contra to that for plaintiff, entitled it to have the verdict set aside and a new trial granted. This testimony consisted of statements of Dr. Clark, a physician for the Sloss-Sheffield Steel & Iron Company, that he had examined plaintiff at the request of the company on May 9, 1931, and found him able to work; the statement of W. J. Porter, the superintendent for Sloss-Sheffield Steel & Iron Company, who said that on May 18, plaintiff was engaged in his usual work as a common laborer and was laid off by order of the company in order to reduce the force. This witness further testified that plaintiff came to him and applied for work after May 18, and when plaintiff complained that he was not permitted to go back to work, "I told him we needed strong men or man power. * * * We were laying off the older men, not men that couldn't work, but those not as efficient." Fred Carter, a foreman for Sloss-Sheffield Steel & Iron Company, corroborated the witness Porter. This testimony presents conflict upon every material point. It was for the jury to weigh the testimony and to consider all the facts and circumstances. This they did and found for the plaintiff.

██ The judge hearing the case refused to grant the motion, and indulging every presumption in favor of the verdict and the ruling of the trial judge, as we must do, we cannot hold that the trial judge committed error in refusing the motion for a new trial.

██ There was admitted in evidence over the objection of defendant a copy of the master policy, furnished by the defendant and admittedly a correct copy. In order for a correct copy of the master policy to be admissible in evidence, it was not necessary for plaintiff to account for its absence. The contract itself accounted for its absence and showed that plaintiff had not and never had the custody or control over it. All that plaintiff had was a certificate showing that he was entitled to certain benefits under the master policy, and when a true copy of the master policy was produced, and that by the defendant, and plaintiff had introduced his certificate showing his right to participate, upon complying with the conditions, and had offered evidence tending to prove a compliance with those conditions, his case was made out. There is no error in admitting the copy of the master policy or the certificate issued to plaintiff.

There is no error in the record and the judgment is affirmed.

Affirmed.