36 So.2d 123

**VOLUNTEER STATE LIFE INS. CO. v. DANLEY.**

**8 Div. 656.**

Court of Appeals of Alabama.
April 20, 1948.

Rehearing Denied May 11, 1948.

Mitchell & Poellnitz, of Florence, for appellant.

546

Bradshaw & Barnett, of Florence, for appellee.

CARR, Judge.

Plaintiff below bases his cause of action on Count 1 of the complaint for total and permanent disability under the provisions of a policy issued to him by the defendant; under Count 2 for the amount of an annual premium on said policy, which premium was paid to cover a period during the alleged disability. The verdict of the jury was favorable to the insured under both counts of the complaint.

Assignment of error No. 1 is predicated on the action of the court in overruling demurrers to the second count. There is serious doubt that the judgment entry contains a sufficient recitation of an adjudication on the demurrers to invoke our review. It is merely a copy of the bench notes of the trial judge. Paletz et al. v. Tayloe et al., 230 Ala. 131, 159 So. 836. We will pretermit a decision on this matter, however, since we are clear to the conclusion that at the instance of the appellant the general affirmative charge should have been given as to Count 2. Our views in regard thereto will be discussed subsequently in this opinion.

 Assignments of error numbered 2, 6, 7, 8, 24, and 25 contain one of the following reviewable defects: Error not pointed out with certainty, not insisted upon in brief, or not sufficiently argued in brief. Great Atlantic & Pacific Tea Co. v. Smalley, 26 Ala.App. 176, 156 So. 639; McDavid v. United Mercantile Agencies, 248

Ala. 297, 27 So.2d 499; Powell v. Bingham, 29 Ala.App. 248, 196 So. 154.

Dr. Harry Simpson testified that he had devoted special study to diseases of the heart and had been treating the maladies for about twenty-five years. Without question he was qualified as an expert to state that in his opinion the appellee was suffering from the effects of coronary thrombosis on each occasion when examined by witness. Pacific Mutual Life Ins. Co. of California v. Edmonson, 235 Ala. 365, 179 So. 185; Tucker et al. v. Graves, 17 Ala.App. 602, 88 So. 40.

There were no objections interposed to the question about which complaint is made under assignment of error number 4. Review on appeal is limited to those matters upon which rulings are invoked at nisi prius. Lipscomb v. State, 32 Ala.App. 623, 29 So.2d 145.

Appellee was interrogated as follows: "Have you ever had or followed the occupation of renting houses for a livelihood?" To which he answered, "No." Appellant did not object to the question, but, after response, moved to exclude the answer. Our approach here is controlled by the rule that where no objection is interposed to a question and the reply is responsive, a refusal to sustain a motion to exclude the answer will not be reviewed by the appellate courts. Louisville & N. R. Co. v. Butler, 1 Ala.App. 279, 55 So. 262.

Refused charge No. 10 if applied would deprive the insured of the benefits provided by the policy if he could have *engaged* in any occupation *whatsoever* for profit during the period claimed. This is not the test of total disability. Metropolitan Life Ins. Co. v. Alston, 248 Ala. 671, 29 So.2d 233; New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547.

Charges numbered 12, 13, 14, and 15 are clearly faulty. Each is abstract; and furthermore they do not accurately state the doctrine of total disability. The standard or test of determination is: Can the insured "*substantially* perform the *material* duties of some occupation for which he is *qualified by experience and training*"? (Emphasis ours.) Metropolitan Life Ins. Co. v. Alston, supra [248 Ala. 671, 29 So.2d 236].

Appellant urges in brief that on the authority of New York Life Ins. Co. v. Jones, 31 Ala.App. 417, 17 So.2d 879, we should base error for the refusal of each of these charges. It is to be noted that the author of the opinion in the Jones case observed that the two charges there being reviewed were not abstract. This aside, some of the essential elements of the applicable rule are omitted in the charges in the instant case. They find place in the instructions in the Jones case, and in this respect, also, the authority cannot influence a holding here.

With the possible exception that it is not entirely abstract, the criticism just noted applies with equal force and effect to refused charge No. 16. With reference to the "occupation of lending money" charge No. 22, given at the instance of appellant, fully covers the matter.

By inadvertence counsel has based a refusal of charge numbered 19 as assignment of error 23. This charge appears in the record among those endorsed "given" by the trial judge. We do not find it among the refused charges.

The refusal of charge No. 20 was not error. The instruction extends the "gainful occupation" to limits too broad and it does not make confinements within the class or group that the insured by experience and training is qualified to perform. The term "occupation" is of relative meaning and has relation to one's capabilities and competency. New York Life Ins. Co. v. Torrance, supra.

There were some exceptions reserved to portions and segments of the court's oral charge. In its entirety the charge was clear and comprehensive. Sixteen written instructions were given at the tender of appellant. The excerpts about which complaint is registered must be considered in connection with the entire oral charge and the given charges. Shaw & Shaw v. Cleveland, 5 Ala.App. 333, 59 So.

534; Hope v. State, 21 Ala.App. 491, 109 So. 521.

We have given due consideration to each of these assignments, and, in harmony with the announced rule, we find no reversible error here.

Charge 29, refused to appellant, was in part taken from a statement in the body of the opinion in the case of New York Life Ins. Co. v. Torrance, supra, and referred to in Metropolitan Life Ins. Co. v. Alston, supra.

■ The bare fact that a charge is copied or taken from an expression in a judicial opinion in some prior case, there correctly stated, does not make it acceptable for inclusion in a special written instruction to be given to the jury. Wear v. Wear, 200 Ala. 345, 76 So. 111; Maxwell v. State, 32 Ala.App. 487, 27 So.2d 804. This rule is especially forceful and pertinent if the two cases are dealing with dissimilar facts.

■ The instant charge contains the vice of assuming facts which, under the evidence, were for the determination of the jury and therefore were invasive of its province. Continental Gin Co. v. Milbrat, 10 Ala.App. 351, 65 So. 424; Pounds v. State, 15 Ala.App. 223, 73 So. 127.

It is cogently urged that the general affirmative charge should have been given the defendant below under Count 1 of the complaint, and this for the reason that the evidence was not sufficient to sustain the claim of total disability.

In order to properly illustrate our views here, we will delineate the tendencies of the evidence in some detail.

The record contains the testimony of the insured, four physicians (two by depositions), and some exhibits.

It appears from the testimony of the appellee that at the time of the trial below he was 57 years of age. He had a limited education. Throughout a great period of his life he had engaged in what may be generally denoted manual labor. For 16 years just prior to 1943 he was a distributing agent for a gas and oil company with territory including the counties of Lauderdale, Colbert, and Franklin.

In the latter part of 1943 he sold his oil business for $50,000.00. For about a year just following he retained a nominal connection or identity with the business for the primary reason, it appears, of aiding the new purchasers in getting acquainted with the territory, customers, and the general conduct of the business. As a part of the consideration for the sale of his oil agency, he received title and possession to a seven-unit apartment house, and at a later date he traded for a store structure in Tuscumbia. These he rented and continued to do so up to the time of the trial. He gave his personal attention to the matter of rentals, receiving rents, insurance on the buildings, taxes, etc. In addition to this, he made about eight property loans during the period for which he claims disability. As to these he testified that he was well acquainted with property values in the vicinity and it did not require any personal investigation for him to arrive at appraisals. He referred the details of drawing the papers and the matter of passing on titles to his attorney. He received payments of interest and principal installments on his loans and marked the mortgage record satisfied when the indebtedness was paid. He gave personal attention to his banking and payment of current bills. His gross income for the calendar years of 1945 and 1946 was about $5,000.00 each year. This was divided approximately one-half each between rents and interest on loans.

The insured testified further that he suffered some pains in the region of his heart in June 1945. These increased in severity and frequency and on July 19th, 1945, a local physician advised that a specialist be consulted. The plaintiff went to Birmingham on July 24th, 1945, and tendered the treatment of his malady to the professional care of Dr. James S. McLester.

We here turn to Dr. McLester's testimony. The doctor testified that the patient came to his clinic on July 25th, 1945, and remained there, practically at all times in bed, for three weeks. At the expiration of the indicated time the appellee returned to his home in Florence, Alabama.

The letter we will now copy is self-explanatory and in our view, with some added explanations, sufficiently delineates Dr.

McLester's testimony as a basis for the purposes at hand:

"August 18, 1945.

"Mr. B. L. Danley,

"Florence, Alabama.

"Dear Mr. Danley:--

"I had a talk with Dr. Bennett on the morning that you left Birmingham, and I presume that you have already seen him. I want to write you briefly of our examinations and to confirm the advice given you verbally. Later, after I have seen you again, I shall send you and Dr. Bennett copies of our clinical notes.

"Prior to coming to Birmingham you had two attacks suggesting a coronary crisis. The electrocardiograms made in Florence and again here in Birmingham, however, showed no definite evidence of trouble. Then, on your first night here, you had a more severe attack and the electrocardiogram made the following day showed conclusive evidence of coronary occlusion. Apparently, the earlier attacks were minor attacks with partial occlusion and then later the vessel became completely occluded.

"The electrocardiogram made on the day that you left the hospital showed essentially the same changes. There was a little change in rhythm not noted earlier. We expect the quinidin, however, to correct this.

"Beyond this nothing grossly abnormal was found. Your general condition seemed excellent. I was very much gratified over your improvement while you were here.

"With this in view, I would suggest the following Treatment:

"1-- Rest is the most important part of treatment. During the next two, preferably three weeks, you should lead essentially the same life which you led here in the hospital. Remain in bed, taking your meals in bed. You may get up to go to the toilet, however, and may sit in a chair for fifteen minutes twice daily, morning and afternoon.

"Dr. Bennett and I agreed on the telephone that it would be alright for you to take a tub bath, but you should go slowly and exert yourself as little as possible.

"2-- At the end of three weeks you may spend the larger part of the day out of bed, but for another two weeks had best not leave the house. Do within reason what you please during these two weeks but attempt no work of any kind and do not unduly exert yourself. Lie down in a room alone for two hours each day after the midday meal and retire early each night.

"After the above five weeks of rest, you may resume your ordinary activities, but you should continue to go slowly. Follow the type of life we agreed upon.

"3-- Your diet should be simple and well balanced, and should include foods of the type we gave you here at the hospital. The diet should be governed by the following rules:

"Your food should consist of simple articles, easily digested. Take no highly seasoned foods, and not much roughage.

"You should take at least three glasses of milk each day, two eggs, and one liberal helping of any tender meat.

"Your evening meal should be relatively light.

"4-- No tobacco.

"If you wish, you may take one small alcoholic drink in the late afternoon. Never more than this.

"5-- Continue the quinidin capsules which we gave you, one three times daily.

"Also, continue the Nembutal capsules.

"I am inclined to believe, if Dr. Bennett approves, that you can discontinue the large tablets containing Nitranital.

"With Dr. Bennett's approval, about six weeks hence, I should like to see you again for a little further examination.

"It has been a pleasure to me to have you as a patient and I hope to hear of your continued improvement.

"With kindest personal regards, I am
                "Yours faithfully,
                "James S. McLester."

In augmenting the directions in the letter and explaining to what he referred in writing, "Follow the type of life we agreed upon", the doctor testified: "Then I gave him directions regarding diet, a simple type of diet, and advised that he take no tobacco. I suggested the use of quinidin cap-

sules and the use of a mild sedative." "My impression is that I told him it would be necessary for him to go slowly and exert himself very little for some months, or even years to come." "That he should, first of all, go slowly in all things, that he should avoid unusual exertion, refrain from getting tired, and not live under nervous strain, that he should avoid the things that put him under tension."

Dr. Harry Simpson testified in the cause. His testimony, with reference to the physiological and functional effects of coronary occlusion and the accepted medical treatment therefor, was in the main in accord with that of Dr. McLester.

The appellee introduced in evidence, in affidavit form, a statement of Dr. Simpson which was furnished the appellant when claim for total disability benefits was filed. This document is dated December 4th, 1945. We will copy some of the pertinent questions and answers taken therefrom:

"How often have you attended or prescribed for claimant during last three months? About once weekly, or every two weeks."

"What is your diagnosis or opinion? Coronary occlusion."

"Is he able to pursue a gainful occupation? No."

"How long has he been totally disabled? On or about August 12, 1945."

"When, in your opinion, can he resume any work? Indeterminate."

"If not totally and permanently disabled, is the disability of a temporary nature from which, in your opinion, claimant will recover? No."

"Do you believe that the claimant is wholly disabled and that he will be permanently, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations? Yes."

Dr. C. H. Sanford of Memphis, Tennessee, who qualified as an expert, by study and experience, of the diseases of the heart, examined the insured on October 2nd, 1946. His testimony was tendered on behalf of the insurance company. Dr. Sanford stated that with particular reference to the heart in his opinion "there was no deviation from the normal." "My opinion is that the plaintiff is not totally disabled." "Assuming that the plaintiff had a coronary thrombosis, it is my opinion that he has recovered from that attack. My usual practice in the case of patients who have recovered from attacks of coronary thrombosis is to allow and encourage them to continue with their previous occupations, with some limitations of hours and strenuousness of work as seems justifiable in each individual case. Many of my patients who have recovered from coronary thrombosis are engaged in the practice of medicine, in mercantile businesses, as foreman and supervisor in plants and factories, farming, and so forth." "In my opinion the plaintiff would be better off physically to be engaged in whatever occupation he was engaged in prior to his supposed attack."

In our approach to the question of instant concern we must take as true the evidence presented by the appellee. New Morgan County Bldg. & Loan Ass'n v. Plemmons, 210 Ala. 286, 98 So. 12; Tidmore v. Mills, ante, p. 243, 32 So.2d 769.

It is a legal truism of equal purport that "if there is evidence reasonably affording an inference adverse to the right of recovery by the party asking the general charge * * * or from which the jury might draw an inference adverse to such party, the general charge should not be given." McMillan v. Aiken et al., 205 Ala. 35, 88 So. 135, 139.

The provisions of the policy pertinent to this inquiry are: "Disability shall be deemed to be total whenever the Insured is . wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit. Total disability shall be deemed to be permanent after it has continued uninterruptedly for a period of at least four months immediately preceding receipt of proof thereof (such disability of such duration being deemed to be permanent only for the purpose of determining the commencement of liability hereunder)."

"There can be no doubt that heart trouble may be a serious disease." Vredenburgh

v. Liberty National Life Ins. Co., 246 Ala. 251, 20 So.2d 207, 211.

■■■ We find in Couch's Cyclopedia of Insurance, Vol. 7, Chapter 31, a very lucid and informative treatise on the subject of total and partial disability. At the beginning of the last section, 1689, of this chapter the author observes: "Whether or not an insured is totally or only partially disabled is usually a question of fact for the jury."

See also, Aetna Life Ins. Co. v. Cornelius, 226 Ala. 452, 147 So. 632; Grand Lodge K. P. of North America v. Archibald, 227 Ala. 595, 151 So. 454; Equitable Life Assurance Society v. Dorriety, 229 Ala. 352, 157 So. 59; Travelers Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909; Equitable Assurance Society of United States v. Watts, 230 Ala. 297, 160 So. 713; Aetna Life Ins. Co. v. Copeland, 25 Ala.App. 383, 147 So. 206; Pacific Mutual Life Ins. Co. of California v. Cotton, 25 Ala.App. 439, 148 So. 177; Equitable Life Assurance Society of United States v. Garrett, 26 Ala.App. 395, 160 So. 776.

We find some confusion and apparent lack of harmony among some of the authorities in the definition of total disability. This is pointed out in Mutual Life Ins. Co. of New York v. Danley, 242 Ala. 80, 5 So.2d 743.

■■■ Justice Foster, writing for the Supreme Court in Metropolitan Life Ins. Co. v. Alston, supra [248 Ala. 671, 29 So.2d 236], defined the doctrine in very clear and meaningful language: "Our cases applying total disability clauses similar in material respects to that now under consideration have held that they mean that such total disability exists when, and only when, the insured cannot *substantially* perform the *material* duties of some occupation for which he is *qualified by experience and training.*" (Emphasis ours.)

Appellant contends that the Alston case, from which the above quotation is taken, is decisive of the instant question and on its authority the general charge should have been given as requested.

We entertain the view that the facts in the case at bar remove it from the in-

fluence of the Alston case in this particular.

It is clearly evident that Justice Foster was there confronted with a set of circumstances which prompted him to excerpt from the opinion in New York Life Ins. Co. v: Torrance, supra: "And further that if insured continues 'Uninterruptedly in the performance of the substantial and material acts of his business or profession in the usual and customary way. To say that one who so performs the duties of his business is wholly disabled, is a contradiction in terms.'"

In referring to the duties incident to the occupation of the insured, the opinion goes on to include: "If he had attempted to do so, and found that his health prevented him from doing it in his usually efficient manner, but in such way as was not satisfactory and up to his standard of service, a different result may follow."

On the first appeal of the Torrance case, 224 Ala. 614, 141 So. 547, the Supreme Court held that the evidence was not sufficient to sustain the claim for total disability. The second appeal, 26 Ala.App. 38, 153 So. 458, came to this court. The record here disclosed that additional evidence was offered by the plaintiff in the second trial below. This evidence was primarily to the effect that the insured labored as a surgeon under physical and mental handicap and was by reason of this fact prevented from performing his duties in substantially his customary and usual manner. On the basis of these augmented facts this court held that a jury question was posed. On certiorari, 228 Ala. 286, 153 So. 463, 464, the Supreme Court sustained our view. In the opinion on certiorari, Justice Foster, writing for the court, said: "The terms of the policy are that total disability must be such as that it 'thereby permanently and continuously prevented (him) from engaging in any occupation whatsoever for remuneration or profit.' If his physical or mental condition was such that his attempt to engage in an occupation was not accompanied with the ability to do so in its substantial features with the skill and accuracy which such business demands, in the usual and customary manner, he is totally disqualified

from pursuing that occupation, though he does undertake to carry it on, but, in doing so, such want of skill and ability are manifest."

■ We will not attempt to collate the facts to the legal doctrines we have announced. We have made effort to state the tendencies of the essential factual disclosures fully and fairly. It is our considered conclusion that the general affimative charge was not due the appellant under Count 1 of the complaint.

We come now to consider the same question as to Count 2. On this matter we entertain the view that the general charge should have been given. Confessedly, this conclusion has been reached with some doubt of its soundness. This is due to the apparent conflict and discord among many of the authorities in jurisdictions throughout the country. We will not attempt to illustrate or discuss these differences, but the fact is made evident by reading the cases cited under the footnote of § 406(b), pages 1392 and 1393 of Vol. 44, C.J.S., Insurance.

We are, of course, bound by the decision of our own Supreme Court, and, as we interpret the holding here, our conclusion must be as indicated. We will attempt to illustrate.

There is no dispute in the evidence that all premiums on the policy in question were paid in full to June 26th, 1946; that the installment which is the basis for Count 2 was paid by check dated July 12th, 1946. This was several months subsequent to the time proof was filed for disability benefits. The evidence is conclusive, also, that the premium payment was made without either of the factors of protest, duress, mistake, or fraud.

The pertinent policy provision is:

"If, after the initial premium has been paid hereon and while this policy and these provisions are in force, proof satisfactory to the Company is received at its Home Office that the Insured, prior to the policy anniversary on which his age at nearest birthday is 60 years, has become, and is at the time of furnishing such proof totally and permanently disabled, as defined herein, as a result of bodily injury or disease occurring after the issuance of this policy, the following benefits will, subject to the provisions and limitations set out herein, be granted:

"1. The company will waive the payment of each premium falling due during the continuance of total and permanent disability beginning with the premium the due date of which next succeeds the date of the commencement of such disability, provided however, that no premium shall be waived the due date of which is more than one year prior to the date of the receipt at the Home Office of the Company of written notice of claim hereunder."

The point urged by appellant is that a recovery should not be allowed because the payment was made voluntarily. The appellee does not contend that the payment was made involuntarily, but takes the sole position that for the reason it was paid subsequently to the time the insurer had due notice of the disability claim a recovery is due.

■ Our courts are committed to the doctrine that, under provisions of policies similar to this of instant concern, the furnishing of due proof of disability constitutes a condition precedent to a waiver of the payment of premiums thereafter falling due.

This question has been reviewed *many* times in cases where the premium had not been paid and an avoidance of obligation was sought. Here we have a situation where the premium was voluntarily paid and effort is made to recover the amount thereof.

In the case of New York Life Ins. Co. v. Mason, 236 Ala. 44, 180 So. 775, 780, the Supreme Court denied a recovery of a premium voluntarily paid. It affirmatively appears that the installment was remitted in the absence of due proof of disability claims. The opinion, on this question, did not turn on this point. This is evident not only by what is therein declared, but more particularly by the authorities cited in support of the view. In the body of the opinion is found: "In the case of National Bank of Boaz v. Marshall County, 229 Ala. 369, 157 So. 444, 445, it was held: 'It is

a well-settled general principle of the common law that in the absence of fraud, money paid to satisfy a colorable demand to a person who has a colorable legal right to receive it may not be recovered back in an action of indebitatus assumpsit, unless the money is paid under duress of person or goods, and the mere fact that it was paid under protest will not render it involuntary. Glass & Co. v. Haygood, 133 Ala. 489, 31 So. 973; Prichard v. Sweeney, 109 Ala. 651, 19 So. 730.' "

If we are correct in our interpretation of the holding in the Mason case, supra, it is not out of harmony with the view of courts of other jurisdictions. New York Life Ins. Co. v. Lecks, 122 Fla. 127, 165 So. 50; Columbian Mutual Life Ins. Co. v. Gunn, 173 Miss. 897, 163 So. 454; New York Life Ins. Co. v. Williamson, 53 Ga. App. 28, 184 S.E. 755.

In the case of Sebastianelli v. Prudential Ins. Co., 337 Pa. 466, 12 A.2d 113, 115, the insured was injured on May 23rd, 1934, and on November 15th just following he filed due proof of disability. The insurer disallowed the claim. The Supreme Court held: "There is one item in plaintiff's claim which was improperly allowed. The policy provided that defendant, upon receipt of proof of total and permanent disability, would waive payment of premiums during the period of such disability. Plaintiff nevertheless paid the premiums during the four years which elapsed between the time of the happening of the accident and the bringing of suit. He seeks their recovery on the ground that they were not payable under the terms of the policy. They were paid by him without any compulsion which the law recognizes as constituting coercion or duress; the fact that he may have been in a practical dilemma, not wishing to risk the forfeiture of his policy in case he should fail to prove the total and permanent disability which he claimed, made the payments no less voluntary within the meaning of the law. Therefore, he cannot now recover them."

It is not without significance to note that among the many authorities cited in support of this pronouncement is the Mason case, supra.

The reason for the rule is logically and meaningfully stated in 21 R.C.L., Sec. 166, p. 143: "The reason of the rule that money voluntarily paid with full knowledge of the facts can never be recovered and its propriety are quite obvious when applied to a case of payment on a mere demand of money unaccompanied with any power or authority to enforce such demand, except by suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the one of whom the money is demanded, it should precede payment. When the person making the payment can only be reached by a proceeding at law, he is bound to make his defense in the first instance, and he cannot postpone the litigation by paying the demand in silence and afterward suing to recover the amount paid. Otherwise, the privilege is left to him of selecting his own time and convenience for litigation, delaying it, as the case may be, until the evidence on which his adversary would have relied to sustain his claim may be lost by the lapse of time and the many casualties to which human affairs are exposed."

The conclusion we have reached leads to the necessity of applying the provisions of Sec. 811, Title 7, Code 1940. The verdict under Count 1 was for $697.45 and under Count 2 for $159.20. By summation the court entered a judgment for the plaintiff and against the defendant for $856.65. It follows that this is excessive in the amount of $159.20.

It is accordingly here ordered that unless appellee files a remittitur as provided by law with the clerk of this court within thirty days in the amount of $159.20, the judgment below will stand reversed and the cause remanded. If such remittitur is duly filed as ordered here, the judgment for $697.45, with interest from date of said judgment, will stand affirmed. The ten per cent penalty is not to be assessed.

Affirmed conditionally.