This is an appeal by plaintiff, Walter F. Mason, Jr., from the entry of summary judgment against him in favor of defendant Connecticut General Life Insurance Company. We affirm.
The facts before the trial court were undisputed. In 1971 the plaintiff, Walter Mason, suffered two severe heart attacks. At that time Mason was employed by the Keebler Company as a route or territory salesman. The job was a physically and emotionally demanding one requiring the plaintiff to drive extensive distances to procure orders from stores, load and unload his truck, stock shelves, rotate merchandise and build displays for the Keebler Company. As a result of his heart attacks the plaintiff was unable to resume the full and energetic activities required by the Keebler job.
The Keebler Company had procured group disability insurance coverage for its employees from Connecticut General Life Insurance Company. Section 11 of the policy provided in part that:
 If sickness or accidental bodily injury, directly and independently of all other causes, disables an Employee so that he is completely prevented from performing the duties of his occupation or employment and if the disability continues after the Benefit Waiting Period shown in the Schedule of Benefits, the Insurance Company will pay Monthly Income in an amount determined from the Schedule of Benefits. Such Monthly Income will be payable for the period during which the disability continues after the Benefit Waiting Period, but for no longer than 24 months. If an Employee, while so disabled, engages in any work for wage or profit (including any Rehabilitative Work), the Monthly Income otherwise payable with respect to any month will be reduced by 80% of the amount of wage or profit to which the Employee is entitled for such work during that month.
Pursuant to these provisions "occupational" disability benefits were paid to Mason from October 11, 1971 until April 30, 1972. On June 12, 1972 Mason was terminated from active service with the Keebler Company. However, in May of that year Mason had become employed by a friend, John Keck, as a lake property salesman. (Mason had in earlier years been similarly employed by Keck in Kentucky). Mason worked in this *Page 1376 
capacity about five months a year from May to September although he was paid a regular monthly salary all year. The job consisted of waiting at an office, meeting potential customers and escorting them to various lots. It was understood that Mason could work at his own leisure and lie down or take off whenever he desired. This employment ended in August, 1976 when apparently Mason's physical limitations did not allow him to keep up with the increased demands of the job. The next Spring, March of 1977, Mason became self-employed as a partner in an aluminum siding business and was still so self-employed when this lawsuit began. In this endeavor Mason worked Monday through Friday. He handled most of the sales work for the partnership in terms of dealing with potential customers, and also handled most of the office and administrative work. Mason was limited in the amount of physical work which he could undertake however, and while he helped his partner make measurements of houses, he left any climbing to his partner.
On October 20, 1976 Mason filed a complaint against Connecticut General alleging in essence that he had been totally and permanently disabled from July 12, 1971 and was therefore entitled to additional occupational disability benefits; and also non-occupational disability benefits. He also alleged that under the policy he was entitled to hospitalization and medical expenses incurred by him through 1975. On October 27, 1977 Connecticut General moved for summary judgment presenting three issues:
(a) Whether or not the defendant was entitled to deduct those earnings made by Mason for the period of time when the occupational disability benefits were payable;
(b) Whether or not the plaintiff was entitled to nonoccupational disability coverage; and
(c) Whether or not medical expenses incurred in 1975 by Mason were covered by the medical expenses provision of the policy.
Thereafter affidavits, depositions and other records and exhibits were submitted which the parties agreed contained all of the relevant evidence. On May 8, 1978 the trial court granted summary judgment in favor of Mason on issue (a), in effect granting him occupational disability benefits for the full twenty-four months less outside earnings, but found for the defendant insurance company on issues (b) and (c). Mason's subsequent motion to vacate the entry of summary judgment was overruled and he brought this appeal.
Summary judgment may be granted only when the moving party has satisfied his burden of showing that there is no genuine issue as to any material fact, and he is entitled to judgment as a matter of law. Board of Water Sewer Commissioners ofCity of Mobile v. Alabama Power Company, 363 So.2d 304 (Ala. 1978); Fleming v. Alabama Farm Bureau Mutual Casualty InsuranceCompany, 293 Ala. 719, 310 So.2d 200 (1975); Ray v. MidfieldPark, Inc., 293 Ala. 609, 308 So.2d 686 (1975). In the present case the parties agree that the facts are undisputed and that our review is limited to deciding whether Connecticut General showed that the entry of summary judgment was proper as a matter of law. We hold that it did.
Because neither Mason nor Connecticut General questions the entry of judgment on the occupational disability issue, we review only whether, as matters of law, Mason was not entitled to non-occupational disability and/or medical benefits.
The pertinent provisions of the Connecticut General insurance policy dealing with "non-occupational" disability are also found in Section 11. That section provides that Connecticut General will pay the employee monthly income subject to certain terms, conditions and limitations upon receipt of due proof that the employee has become totally disabled as described in the policy. Qualification for the non-occupational benefits is first conditioned upon *Page 1377 
monthly income having been received for twenty-four months under the occupational disability provisions of Section 11. Mason's right to those benefits is not questioned on this appeal and hence from the judgment entered it appears the first condition has been met. However, the fact that plaintiff wasdisabled under the occupational disability provisions is not dispositive of the issue of total disability under thenon-occupational disability clause. That clause provides that:
 If an Employee is so disabled that he is completely prevented from engaging in any occupation or employment for which he is qualified, or may reasonably become qualified, based on his training, education or experience, and if Monthly Income has been payable for 24 months [under the occupational disability clause], the Insurance Company will continue Monthly Income payments during the period he remains so disabled. (emphasis added)
In Mutual Life Insurance Co. of New York v. Danley, 242 Ala. 80, 5 So.2d 743 (1941), this Court extensively surveyed the Alabama law on non-occupational, or "total disability" clauses, and there set forth the rule to be applied when a plaintiff claims benefits under them:
 [T]otal disability within the meaning of the policies here involved means inability to substantially perform the duties of any substantially gainful occupation for which he is qualified by training, education or experience . . . . (emphasis added)
This is still the rule of law in Alabama. Wilkey v. Aetna LifeInsurance Co., 269 Ala. 308, 112 So.2d 458 (1959); Pan CoastalLife Insurance Co. v. Malone, 40 Ala. App. 325, 114 So.2d 277,cert. den. 269 Ala. 515, 114 So.2d 283 (1959); World InsuranceCo. v. Hall, 384 F.2d 138 (5th Cir. 1967).
The evidence is undisputed that Walter Mason was a "salesman." That he was qualified to do this type of work based upon his training, education and experience is abundantly clear. In State v. Newbern, 46 Ala. App. 210, 239 So.2d 780
(1970), Presiding Judge Thagard had the occasion to define a "salesman," quoting J.A. Fay and Egan Co. v. Brown MachineryCo., 14 S.W.2d 491 (Mo.App. 1929): "In Webster's New International Dictionary . . . [a] `salesman,' . . . is defined as `one whose occupation is to sell goods or merchandise.'" While this is a short definition, it is a very broad one, limiting the term neither to the place in which one sells, nor to the physical characteristics necessary to be possessed by one who sells. Certainly the evidence shows that the plaintiff was engaged as a salesman for the Keebler Company when the heart attacks occurred and that subsequently he was engaged as a salesman for Mr. Keck. Neither is it disputed that Mason became a partner in the aluminum siding business and was thus in the broad sense of the term, a "salesman." That in all of these forms of employment a different product was sold is of no importance. It is important only that the plaintiff was engaged in substantially performing the duties of a substantially gainful occupation for which he is qualified. Nor is it determinative that the plaintiff's duties in his employment subsequent to the heart attacks were less strenuous. A person could be a successful salesman with little physical mobility or ability if he could still substantially perform those duties which are required of a salesman: to sell, i.e., to contract prospective customers, to persuade them to look favorably toward your goods if they are not already so favorably disposed, and to transfer those goods for a consideration. In this case Walter Mason retained those abilities and apparently was successful. In 1972 when he became a real estate salesman his income was $14,700. Following that year his income level was variously: $9,700 for 1973; $9,100 for 1974; $13,000 for 1975; and $13,700 for 1976. We hold that these facts establish as a matter of law that Mason was not totally disabled under the Danley test. This holding is also dispositive of the medical coverage issue. This follows because that portion of Section *Page 1378 
11 dealing with major medical benefits requires inter alia that the expenses "result . . . from an Injury or Sickness which causes the Employee . . . to be totally disabled continuously
from the day his insurance terminates until the day the Covered Expenses are incurred . . ." (emphasis added). Therefore we must affirm the trial court's entry of summary judgment holding that the plaintiff, Walter Mason, was not entitled to non-occupational disability benefits or medical benefits under the policy of insurance issued by the defendant, Connecticut General Life Insurance Company.
AFFIRMED.
BLOODWORTH, MADDOX, JONES and SHORES, JJ., concur.