James O. EMERSON, Jr., Plaintiff,

v.

FIREMAN'S FUND, AMERICAN LIFE INSURANCE COMPANY, Defendant.

Civ. A. No. C80–1402A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 30, 1981.

Cheeley & Chandler, Joseph E. Cheeley, Buford, Ga., for plaintiff.

J. Kenneth Moorman, Ben S. Williams, Barry S. Mittenthal, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the court on cross motions for summary judgment. The plaintiff is a court reporter, certified by the State of Georgia to record proceedings by both the shorthand and stenovoice methods of court reporting. In his complaint, the plaintiff alleges that he is entitled to recover certain disability benefits from the defendant under a Group Accident and Sickness Insurance Policy issued to the Court Reporting Profession Group Insurance Trust, d/b/a National Shorthand Reporters Association.

Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332 (1970).

### I. *Facts*

There are two predominant methods of court reporting: shorthand and stenovoice. Shorthand reporters use a system of symbols, made either by stenotype machine, or manually according to the Gregg or Pitman systems, to abbreviate the conversations they are reporting. Stenovoice reporters use a stenomask, a device which holds a shielded microphone over their mouth, and repeat, *sotto voce*, the proceedings they are reporting.

Shorthand and stenovoice reporters each have their own professional organizations. The shorthand reporters organization is the National Shorthand Reporters Association ("NSRA"). The plaintiff is trained as both a stenotype and stenomask reporter. He is a member of NSRA. The plaintiff is employed by the Georgia Workers' Compensation Board and also does freelancing which includes regular work in Gwinnett Superior Court.

The Group Policy in question here was issued on the basis of a master application submitted by the NSRA. After receiving various brochures about the availability of a disability insurance policy at group rates, the plaintiff signed up for coverage and began paying premiums.

The plaintiff became a "covered person" under the present version of the policy on August 15, 1978. He was issued a certificate of insurance referenced to the group policy, which was referenced in turn to the master application.

Under certain conditions, the policy provides covered persons with "Total Disability Monthly Income Benefits" and "Loss of Use Indemnity Benefits." The plaintiff maintains that he is entitled to both types of benefits because he suffers from chronic arthritis which has disabled him from using a stenotype machine since June, 1979. The defendant, however, denies the plaintiff's eligibility for either of these payments. The defendant maintains that the plaintiff is not "totally disabled" because he is able to perform the substantial features of his job by use of the stenovoice method of reporting.

In pertinent part the policy provides:

TOTAL DISABILITY MONTHLY INCOME: If total disability, resulting from injury or sickness and requiring the regular care and attendance of a physician commences while insurance under this Policy is in force with respect to the Covered Person whose loss is the basis of claim and continues for a period in excess of the applicable Elimination Period, the Company will pay the applicable Monthly Income for each month such total disability continues beyond said Elimination Period for not longer than the applicable Maximum Benefit Period as the result of any one accident or any one sickness.

The policy also provides "Loss of Use Indemnity:"

If prior to a Covered Person's attainment of age 65 and as a result of injury or sickness for which benefits are payable under the Total Disability Income Provisions of this Policy for a period of 12 consecutive months, the Covered Person:

1. also sustains pathological changes to either or both of the Covered Person's hands; and, upon the expiration of such 12 month period, it is medically determined by a physician that such pathological changes have resulted in the Covered Person's permanent loss of the occupational use of either or both hands; or

2. unless the Covered Person is not insured under these provisions with respect to loss of sight, speech and hearing, as determined in accordance with the Schedule of Benefits, also sustains total, irremediable and irrecoverable loss of: (a) the sight of both eyes; (b) speech; or (c) hearing in both ears; and, upon the expiration of such 12 month period, if it is medically determined by a physician that such loss has resulted in the Covered Person's permanent loss of the occupational use of such eyes, speech or hearing;

the Company will pay, as of the expiration of such 12 month period and annually thereafter during the Covered Person's lifetime and while such loss remains permanent, the applicable Installment Indemnity amounts, if any, beyond the first, determined in accordance with the below Table of Installment Payments."

Under the policy, the term "Total Disability" as used in the provisions relating to "Total Disability Monthly Income" and "Loss of Use Indemnity" was defined as follows:

"total disability" means that the Covered Person is wholly and continuously disabled and prevented from performing all of the material duties of the Covered Person's occupation.

The plaintiff contends that in essence the policy provides for disability payments when three elements are present. (1) A covered person (2) disabled from performing the substantial duties (3) of his occupation. There is no dispute that the plaintiff is a covered person and that he meets the objective policy prerequisites such as age

and absence of military service during the period of disability. There is no dispute that the plaintiff has a disability. The plaintiff has submitted affidavits from his physician attesting to an arthritic condition in the small joints of the plaintiff's hands which renders the plaintiff unable to use a Stenotype machine.

On this basis, the plaintiff maintains that the only remaining dispute is over the definition of his occupation for purposes of the insurance contract. The plaintiff has candidly admitted that generally speaking, his occupation is that of a "certified court reporter." By use of a Stenomask the plaintiff is able to perform the substantial portion of a court reporter's duties. In fact, since late fall of 1973, over five years before his disability, 90 to 95 percent of the plaintiff's reporting for the Georgia Workers' Compensation Board has been performed with a Stenomask. To date, the plaintiff has not suffered a statistically meaningful loss of income.

However, the plaintiff contends that the insurance policy from NSRA was specifically intended to protect against risks to the insureds' ability to use the shorthand method of reporting. The plaintiff maintains that for purposes of the policy his *"insured occupation"* is that of a shorthand reporter. He insists that any broader occupational categories into which he might fit, or use himself for other purposes, are not relevant in determining his benefits under the policy.

The plaintiff's argument in support of his contentions is straightforward. First, only members of the NSRA could purchase the policy relied on by the plaintiff. In order to be a member of the NSRA it is necessary to be a shorthand, not a stenomask reporter. Eligibility under the policy specifically requires in addition to NSRA membership, that the insured be actively employed as a *shorthand* reporter on the date he applies for insurance.

Second, disability clauses in insurance contracts are generally classified as either occupational or general. Occupational clauses insure against the inability of the insured to perform the duties of his occupa-

tion. General clauses insure against the inability of the insured to perform the duties of any gainful occupation. 6 A.L.R. 4th 422, 425 (1981).

Since the clause in the instant policy is an occupational clause, and the occupation covered by a policy with the NSRA would be shorthand reporting, the plaintiff asserts that he may collect solely on the basis of his disability as a shorthand reporter.

The defendant's position is equally straightforward. The defendant maintains that the plaintiff's occupation, and his insured occupation are one in the same, that of a court reporter. In any event, the defendant maintains that under Alabama law occupational disability clauses are consistently interpreted to deny a claimant benefits unless the claimant cannot substantially perform the material duties of *some* occupation for which he is qualified by experience and training. Therefore, even if the plaintiff's insured occupation is as a shorthand court reporter, since he is still able to work in another occupation for which he is qualified, that of stenovoice reporter, the plaintiff cannot recover at this time.

## II. Construction of the Insurance Policy

Construction of a contract is ordinarily a question of law for the court. The insurance contract in this case specifies that it is to be construed according to the law of Alabama. This agreement facilitates uniformity in construction of the policy.

■ Under Georgia conflicts law the parties agreement as to the choice of substantive law will be given effect unless the foreign law selected conflicts with the public policy of Georgia. *Missouri State Life Insurance v. Lovelace*, 1 Ga.App. 446, 58 S.E. 93 (1907). In his response to the defendant's statement of material facts the plaintiff denies that Alabama law governs the construction of the policy. Plaintiff's Response, October 8, 1981, at ¶ 5. However, the plaintiff offers neither an alternative *lex contractu* nor any authority for his opposition to applicability of Alabama law. His mere averment is insufficient. Accord-

ingly, the court will turn to the Alabama cases.

Insurance policies are to be construed strictly against the insurer and liberally in favor of the insured, and where there is doubt as to the meaning of a term of the policy, that doubt must be resolved in the way most favorable to the insured. *Cotton States Life Insurance Co. v. Knowles*, 45 Ala.App. 607, 234 So.2d 886 (1970). However, in construing an insurance policy, courts are guided by the rule that its terms and provisions must be construed as written so long as those terms and provisions are clear, unambiguous and not in conflict, and courts are not permitted to change or alter the wording of policies so as to write a new contract. *Pennsylvania Life Insurance Co. v. Green*, 367 So.2d 463 (Ala.Civ.App.1978).

This case apparently raises two issues that have not been directly ruled upon by the Alabama courts. First, under a group insurance plan, what standards determine a claimant's "occupation" for purposes of an occupation specific disability payments clause. Second, under an occupation specific disability clause what obligation does a claimant have to take advantage of alternative employment opportunities before he can qualify for disability payments due to inability to perform the substantial duties of his insured occupation.

### III. *The Plaintiff's Occupation*

The plaintiff has failed to cite a single authority for the proposition that the criteria for membership in a group obtaining group insurance are automatically incorporated into the definition of group members' occupations for purposes of a disability payments clause. It is inherent in the concept of group insurance that membership in the group must be precisely and rigorously defined. It does not follow as a matter of logic, however, that criteria for membership should operate as exclusive evidence of the group members' "occupation." An insured's occupation may change after he first becomes covered under a policy; an insured may have more than one occupation; or the scope of the term "occupation"

may vary from the context of group membership criteria to the context of the disability clause.

Acceptance of the plaintiff's proposition at face value would lead to several odd results. The meaning of an otherwise unambiguous disability payments clause would change depending only upon whether it was issued directly to an individual or through a group. Further, where group membership was defined as being an employee of a particular employer, the insured's occupation would be limited in such a way that the insured would apparently be eligible for disability payments if he could no longer meet the job qualifications for his original employer, but could meet the qualifications for a similar job with another employer.

Nothing within the four corners of the insurance policy indicates that "occupation" should be defined exclusively with reference to the criteria for group membership. The court has found only one indication of judicial support for the plaintiff's contention. *See Littman v. National Casualty Co.*, 266 N.Y.S.2d 183, 48 Misc.2d 881 (1966). (The term "any gainful occupation for which the claimant was qualified", limited to allied medical fields in which the claimant was trained where policy was written exclusively for members in good standing of the Medical Society for the County of New York.)

Although it might have been reasonable to create separate rules for determining a claimant's occupation under individual and group policies, there is no indication that the Alabama courts have done so.

It has been stated broadly that a court must look to the insured's occupation as a whole in order to determine whether or not recovery should be allowed on the ground that the insured can no longer perform his occupational duties. 1A Appelman, Insurance Law and Practice § 671, at 599. The term "occupation" is of relative meaning and has relation to one's capabilities and competency. *Volunteer State Life Insurance Co. v. Danley*, 33 Ala.App. 543, 36 So.2d 123 (1948).

The approach stated by Appelman is the only reasonable one to take since, ordinarily, under all types of clauses, to narrow the definition of an insured's present or potential occupations is to expand the conditions under which the insured will recover for inability to work at those occupations.[1]

■ As a general rule, when an insurance contract refers to an occupation in promising payments if the insured is unable to work, the occupation referred to is the occupation the insured was carrying on at the time he was injured. 1A Appelman, Insurance Law and Practice § 671 at 600 n.4. Thus, it is held that when an insured changes occupations, it is his occupation at the time of the disability, not at the time the policy went into effect that controls. *Id.* at "Change of Occupation."

■ Similarly, when an insured fills out his application and lists an occupational description that varies from what he actually does, the courts will look to his actual duties, not the application to determine the insured occupation. *Id.* at "Occupation Not That Stated." *See also Bell v. Continental Assurance Co.,* 123 Ill.App.2d 274, 260 N.E.2d 114 (1970) cited in 15 Couch, Cyclopedia of Insurance Law § 53:68 (2d ed. Supp.1980) at 21.

It is uncontested that since the fall of 1973, several months after the plaintiff applied for insurance, that the plaintiff has used the stenomask method of reporting in his job as a reporter for the Georgia Workers' Compensation Board.

Therefore, if the court accepts the distinction between the occupations of shorthand reporter and stenovoice reporter, urged by the plaintiff, it appears that by June 1979 when the plaintiff became disabled, that he had changed occupations, or was pursuing two occupations.

■ Thus, it appears to the court that even taking the facts most favorably to the plaintiff that, as a matter of law, his occupation, for purposes of eligibility for disability, was either as a court reporter generally, or as a stenovoice reporter primarily, and a shorthand reporter secondarily. Only with regard to his freelance work could it possibly be said that his occupation was solely that of a shorthand reporter at the time his disability arose.

It appears to the court that accepting the plaintiff's narrow definition of his "insured occupation" might create a further, perhaps fatal, difficulty. The policy provides that coverage will terminate:

6. On the individual premium due date coinciding with or next following the date the Covered Person retires or voluntarily ceases to be actively employed, as defined herein, in the duties of the Covered Person's occupation . . .

And the policy defines "actively employed" to mean that "an eligible person is actively engaged full-time in the duties of his occupation at least 30 hours per week."

There was no evidence on the precise number of hours the plaintiff worked at the Georgia Workers' Compensation Board where he used the stenovoice method of reporting. However, it appeared from the various depositions that this was the plaintiff's primary employment. If shorthand reporting is a separate occupation, and the plaintiff worked at the occupation less than 30 hours per week since 1973, there would be serious questions as to the plaintiff's status as a covered person.

IV. *Obligation to Pursue Other Occupations*

Nonetheless, since on the evidence actually presented it might be found, at least with regard to his freelance work, that the plaintiff's "insured occupation" was that of a shorthand reporter, the court will consider the second issue presented by the plaintiff, whether or not the plaintiff has an obliga-

---

1. The counter example to this general rule arises when a defendant insurance company seeks to characterize a narrow range of profit seeking activities of an insured, such as collecting rents on investment properties, or managing investments, as separate occupations which prohibit recovery under general disability clauses. *See e. g., Volunteer Life Insurance Co. v. Danley,* 33 Ala.App. 543, 36 So.2d 123 (1948).

tion to pursue other occupations before he can be said to be totally disabled under the policy in this case. For the purposes of this inquiry it is assumed, *arguendo,* that at all times relevant to the plaintiff's claim that his "insured occupation" was that of a shorthand reporter.

The plaintiff's position is that because the disability clause in the policy is occupation specific, he has no obligation whatsoever to pursue any non-insured occupation before he can be said to be totally disabled. The defendant's position is that Alabama does not recognize occupational disability clauses. Accordingly, the plaintiff's obligation to pursue another occupation is the same as it would be under a general disability clause, as limited by the Alabama courts.

In support of the plaintiff's position is the general rule on occupational clauses. If a contract refers to "engaging in any occupation or employment for wage or profit", it necessarily does not mean the same thing as "performing any and every kind of duty pertaining to the insured's employment." One is general, the other limited. 1A Appelman, Insurance Law and Practice § 681 at 629. An insured will therefore be totally disabled whenever he cannot perform the duties of his occupation, without regard to his fitness or ability to perform other occupations. Alabama, however, is apparently the only state that does not follow the general rule. 21 A.L.R.3d 1155, 1200.

In *Pan Coastal Life Insurance Co. v. Malone,* 269 Ala. 515, 114 So.2d 283 (1959) the

accident policy in question defined total disability for short term benefits as consisting of injuries which shall "wholly and continuously disable and prevent the insured from performing any and every kind of duty pertaining to his occupation."[2] The court held that the policy provision in question was in material respects, "essentially the same" as provisions requiring that the insured be "prevented... from engaging in any business or occupation, or performing any work for compensation or profit."

The court specifically considered the petitioner's position that the foregoing policy provisions were different from each other, and required different jury instructions on the insured's obligation to pursue alternative occupations. In rejecting the petitioner's position, the court restated the test under Alabama law, that "... total disability exists when, and only when, the insured cannot substantially perform the material duties of some occupation for which he is qualified by experience and training." Cites omitted. 269 Ala. at 517, 114 So.2d at 285.

This court is not in a position to pass upon the merits of Alabama's unusual position.[3]

In a subsequent case, *Mason v. Connecticut General Life Insurance Co.,* 367 So.2d 1374 (Ala.1979) the Alabama Supreme Court implicitly acknowledged different standards under occupational and general disability clauses. That case, like *Malone,* involved a policy with both occupational

**2.** For long term benefits the policy required general disability.

**3.** In the case of a general disability clause, the Alabama rule is a liberal one, since it limits an insured's obligation to pursue other occupations to those for which he is fit. *See Mutual Life Ins. Co. v. Danley,* 242 Ala. 80, 5 So.2d 743 (1941).

But in regard to occupational clauses, the oddity of the Alabama law is manifest. Ordinarily, courts will not construe two dissimilar and contrasting expressions to have the same meaning. 1A Appleman, Insurance Law and Practice § 681 at 629. Further, insurance contracts are to be construed in favor of the insured, and against the insuror, the party that drew the contract.

The cases on which the decision in *Malone* rests sought to maintain the distinction between total and partial disability where the policy required "total disability in any occupation." But the instant policy appears on its face to be a contract allowing recovery for partial disability. The insured must be totally disabled in his profession, but only partially disabled with regard to the universe of occupations for which he is fit.

Nonetheless, the Alabama rule is logical to the extent it rests on a compromise that the insuror can never have a true general disability clause and the insured can never have a true occupational clause.

and general clauses. The trial court in *Malone* had entered judgment for the insured on the occupational clause, and that ruling was not contested on appeal. The court stated that "the fact that plaintiff was disabled under the occupational disability provisions is not dispositive of the issue of total disability under the non-occupational disability clause."

*Malone* does not appear to have been overruled by *Mason.* And, any doubts created in the court's mind by the opinion in *Mason,* are extinguished by the particular facts of this case.

Even if the Alabama courts recognized a distinction between occupational and general clauses, it does not follow that the insured would have no obligation to pursue another occupation under an occupational clause in the unusual case, like that here, where the insured contends to be concurrently pursuing two distinct, though closely related occupations at the time of his disability.

In *Metropolitan Life Insurance Company v. Alston,* 248 Ala. 671, 29 So.2d 233 (1947), the court said that:

> We do not think the definition of "total disability" which we have quoted means that if the insured is engaged in several occupations and gives up one because of his disability, but is able to carry on one of them, and does so in his customary and efficient manner, he is totally disabled.

Although this was a case construing a general disability clause, the logic of the court's position is equally applicable to an occupational clause. It is not unreasonable that a skilled professional would insure the skill that has allowed him membership in a selective professional organization and a job in a specialized line of work.

■ But, even if such an insured were under no obligation to learn new skills, revive old skills, or search for opportunities in order to be able to pursue another occupation, where the insured is *concurrently* pursuing his insured occupation and a related occupation, and after his disability arises he is able to retain his regular employment and suffers no statistically significant decline in earnings, then under the rule announced in *Alston,* the insured could not be said to be so totally disabled as to be eligible for payments.

On a motion for summary judgment the moving party bears the burden of showing both the absence of a genuine issue as to any material fact and that judgment is warranted as a matter of law. *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir. 1975). The evidence on the motion must be construed in favor of the party opposing the motion, and the opposing party must receive the benefit of all favorable inferences that can be drawn from the evidence. *American Telephone and Telegraph Co. v. Delta Communications Corp.,* 590 F.2d 100 (5th Cir. 1979).

Applying these standards to the instant case, the court concludes as follows. The policy specifies that Alabama law will apply. While denying that Alabama law applies, the plaintiff has not supported his denial with a single authority or alternative *lex contractu.* Alabama has not adopted the reasoning of the New York Courts in *Littman v. National Casualty Co.,* 266 N.Y. S.2d 183, 48 Misc.2d 881 (1966) regarding the definition of "occupation" under group insurance policies. Thus, the definition of "occupation" under group and individual policies is not construed under different rules.

But even if for purposes of summary judgment the court accepts the plaintiff's contention that shorthand reporting is a distinct occupation under Alabama law, an insured is not totally disabled if he can successfully engage in some other gainful occupation for which he is qualified. This is so, *a fortiori,* where the insured has been concurrently pursuing related occupations, and is able to continue in one of them without significant loss of income after his disability.

Accordingly, the plaintiff's motion for summary judgment is DENIED, and the defendant's motion for summary judgment is GRANTED.